**Mario Alvaro PALOMO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–10–00329–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 18, 2011.

Daphne L. Pattison, Houston, for appellant.

Dan McCrory, Houston, for state.

Panel consists of Justices ANDERSON, SEYMORE, and McCALLY.

## OPINION

SHARON McCALLY, Justice.

A jury convicted appellant Mario Alvaro Palomo of one count of murder and assessed punishment at life imprisonment and a $10,000 fine. Appellant challenges his conviction in three issues, arguing that (1) the evidence was insufficient to convict him of murder, (2) the trial court erred by admitting evidence of an extraneous offense during punishment without first making a threshold determination of admissibility, and (3) the State failed to prove the extraneous offense beyond a reasonable doubt. We affirm.

### BACKGROUND

Appellant was living in an apartment at the White House Apartments with several other people, including Humberto Torres and Julio Rodriguez. On August 15, 2008, Ricardo Perez spent the night in the apartment as appellant's guest. That night, Rodriguez overheard appellant threaten to kill Perez because Perez tried to enter appellant's room.

During the morning of August 16, 2008, Perez again attempted to enter appellant's room while appellant was sleeping. Later that day, the residents of the apartment and Perez began drinking beer. On the patio, police later found over one hundred empty cans of beer, which had been consumed that day. At some point during the day, Torres and appellant tried to rally others to fight some Salvadorian neighbors. Perez refused to fight. According to Rodriguez, this upset appellant because he thought Perez "was pushing us Mexicans off to one side." Eventually, everyone calmed down, and nobody wanted to fight.

At about 7:00 p.m. or 7:30 p.m., Rodriguez was standing outside the apartment when he saw appellant call Perez behind a parking lot. Rodriguez did not testify that he saw the shooting, but did testify that he heard gunshots. Torres emerged from where Perez's body was later found by police, and he told Rodriguez, "It was Mario. It was Mario." Torres appeared very frightened and fled the scene. No witness testified to seeing appellant leave the scene, but appellant's former roommate, Hector Chacon, testified that appellant arrived at Chacon's apartment at the Clarewood Garden Apartments at about 9:30 p.m. or 10:00 p.m. that night. Appellant asked to spend the night, and Chacon consented. Chacon testified that appellant appeared nervous.

Houston Police Department officers began to arrive at the crime scene at around 10:00 p.m. Officer Jennifer Coffelt was one of several officers who searched the apartment where appellant and Torres had lived. Inside appellant's bedroom, police found three boxes of ammunition—one box of 10–millimeter rounds and two boxes of .22–caliber rounds.

At about 3:00 a.m. the next morning, police were still at the crime scene when Torres returned. The clothes he wore and a wallet in his possession had blood on them, and he was uncooperative and fearful when speaking with police. The officers viewed him as a suspect and placed him on hold in the city jail. Officer Coffelt testified, however, that she eventually became "100 percent confident that he was not the person who had killed the complainant."

Later during the morning of August 18, appellant called Rodriguez from Chacon's apartment and asked Rodriguez to destroy all of appellant's papers and throw the bullets down the toilet. Rodriguez said he would do so, but he did not. He testified that he felt threatened by appellant, and he spoke with his brother, Miguel, about the incident. Miguel called the police and led officers to the Clarewood Garden Apartments.

Officer Fabian Lee spoke with Miguel outside at the Clarewood Garden Apartments. Miguel spotted appellant and pointed him out, and Officer Lee and appellant made eye contact. As soon as they saw each other, appellant ran very quickly into a nearby apartment. The owner of the apartment, who Miguel knew only as "El Merengue," ran outside. Merengue was scared, and he said appellant "had run in there to hide the gun where you wash your hands."

Appellant refused to come out of the apartment, so police officers surrounded it, cleared out nearby apartments, and created a perimeter. A SWAT team arrived a few hours later, and while setting up positions in the adjoining apartments, Officer Joel Salazar found appellant sitting in the bathroom of an apartment that shared a wall with Merengue's apartment. Appellant was covered in sheetrock powder and had insulation stuck to his skin. Officer Salazar observed a large hole in the wall separating the two apartments.

After appellant was taken into custody, Officer Daniel Nunez searched Merengue's apartment and discovered a revolver under the sink. The gun had a strong odor of cleaning oil, which indicated to Officer Nunez that the gun could have been recently fired and cleaned. Ballistics testing later confirmed that this gun fired at least three of the bullets recovered from the scene of the murder.[1] At trial, the State showed the recovered weapon to Julio Rodriguez, and he testified that it resembled a gun appellant had shown to everyone at the apartment when they lived together.

The jury found appellant guilty of murder and assessed punishment at life imprisonment. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In appellant's first issue, he argues that the evidence is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *See Isassi*, 330 S.W.3d at 638. Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

The evidence is clearly sufficient in this case. The record supports the following circumstances of appellant's guilt:

(1) he was seen with a gun resembling the murder weapon prior to the murder, *see Guevara v. State*, 152 S.W.3d 45, 51 (Tex.Crim.App.2004) (defendant was seen shooting a gun of the same caliber as the murder weapon a month before the murder);

(2) he threatened to kill Perez, *see Ross v. State*, 133 S.W.3d 618, at 621 (Tex. Crim.App.2004) (defendant threatened the complainant with violence not long before the murder); *Silva v. State*, 995 S.W.2d 872, 874 (Tex. App.-Waco 1999, no pet.) (defendant threatened to kill the complainant the night before the murder);

(3) he told Perez to go to the location where Perez was murdered, *see Arias v. State*, No. 04–09–00571–CR, 2010 WL 5541118, at *4 (Tex.App.-San Antonio Dec. 29, 2010, pet. ref'd) (mem. op., not designated for publication) (defendant arranged to meet the complainant at the place where the complainant was killed);

(4) he was seen at the location of the crime shortly before the murder, *see Wolfe v. State*, 917 S.W.2d 270, 275 (Tex.Crim.App.1996) (defendant was seen within a few blocks of the crime scene shortly before and after the murder);

(5) he possessed the murder weapon soon after the murder and had access to the location where police discovered the weapon, *see Madden v. State*, 799 S.W.2d 683, 691–92 (Tex. Crim.App.1990) (defendant sold the murder weapon to someone else shortly after the murder; referring

---

1. All of the other recovered bullets contained insufficient markings for an identification.

That is, the revolver found by Officer Nunez could not be excluded as firing those bullets.

to this evidence as "most damaging");

(6) he attempted to conceal evidence by hiding the murder weapon, which had been recently cleaned, and he asked his friend to destroy bullets by flushing them down a toilet, *see Guevara*, 152 S.W.3d at 50 (defendant's attempt to conceal evidence is a circumstance of guilt); *see also Hanson v. State*, 55 S.W.3d 681, 690 (Tex.App.-Austin 2001, pet. ref'd) (defendant cleaned the murder weapon after crime);

(7) he fled the scene of the murder by leaving his own apartment complex and spending the night elsewhere; he ran from police immediately upon seeing them the next day; he barricaded himself in an apartment for hours during a standoff with police; and he tunneled through a wall in an attempt to escape capture, *see Clayton v. State*, 235 S.W.3d 772, 780 (Tex.Crim.App.2007) (defendant's flight from the crime scene is a circumstance of guilt); *Hardesty v. State*, 656 S.W.2d 73, 77–78 (Tex. Crim.App.1983) (defendant's attempt to avoid police apprehension is a circumstance of guilt).

Appellant argues on appeal that "any rational juror would believe that Humberto Torres, rather than Mario Palomo, killed the deceased either due to the man's refusal to fight against Salvadorians or in order to steal his wallet or both." We first note that appellant relies on facts not proven at trial to establish a robbery motive for Torres.[2] But regardless of whether Torres can be linked to the crime scene or participated in the killing, the evidence linking appellant to the murder is sufficient for his conviction. A rational jury could have found beyond a reasonable doubt that appellant intentionally caused the death of Perez.

Accordingly, appellant's first issue is overruled.

## EXTRANEOUS OFFENSE EVIDENCE ADMITTED DURING PUNISHMENT

In his second issue, appellant argues that the trial court erred during punishment by admitting evidence of an extraneous offense without making a proper threshold determination that the State could show beyond a reasonable doubt that appellant committed the offense. In his third issue, appellant argues that the State failed to prove the extraneous offense beyond a reasonable doubt. We hold that appellant has failed to preserve error for his first issue, but nonetheless, the trial court conducted a proper threshold inquiry and did not abuse its discretion in admitting the evidence.

■■■ Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure allows the State to introduce during punishment relevant evidence of an extraneous crime or bad act so long as the evidence would allow a jury to conclude beyond a reasonable doubt that the defendant committed or could be held criminally responsible for the crime or act. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West 2006); *Smith v. State*, 227 S.W.3d 753, 759–60 & n. 16 (Tex.Crim.App.2007);

---

**2.** Appellant argues, "The bloody wallet found on Humberto surely belonged to the deceased." There is no evidence in the record regarding ownership of the wallet. Further, appellant's theory on appeal regarding access to the murder weapon directly contradicts his own testimony at trial. Appellant argues that Torres "clearly had access to the gun in Mr. Palomo's room" and that Torres and appellant had "equal access to the gun." At trial, however, appellant testified that the gun did not belong to him, and he saw it only when a stranger tried to sell it to him on the day after the murder.

*Davis v. State*, 315 S.W.3d 908, 913–14 (Tex.App.-Houston [14th Dist.] 2010), *rev'd on other grounds*, 349 S.W.3d 517 (Tex. Crim.App.2011). The trial court makes the decision on the threshold issue of admissibility and may not admit extraneous offense evidence unless the evidence is such that a jury could rationally find the defendant criminally responsible for the extraneous offense. *Davis*, 315 S.W.3d at 914 (citing *Smith*, 227 S.W.3d at 759–60). Ultimately, the fact finder must decide whether the extraneous offense was proven beyond a reasonable doubt. *Id.; see also Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex.Crim.App.1996) (plurality opinion). We review a trial court's decision to admit extraneous offense evidence during punishment for an abuse of discretion. *Mitchell*, 931 S.W.2d at 953.

## A. Appellant did not preserve error regarding the adequacy of the trial court's threshold inquiry.

■ Before punishment, appellant objected to the introduction of extraneous offense evidence related to an uncharged murder by arguing that (1) the evidence would be prejudicial, (2) the jury would not be able to follow the court's instruction to only consider the evidence if the jury found appellant criminally responsible beyond a reasonable doubt, and (3) the State would not be able to present enough evidence to put the issue in front of the jury. At no point did appellant complain to the trial court that it had not conducted a proper threshold inquiry into the admissibility of the evidence. On appeal, however, appellant now argues that the trial court erred by admitting the evidence without making a threshold determination that the State could show beyond a reasonable doubt that appellant committed the extraneous offense. He argues that he is entitled to a new punishment hearing because "the Court failed to make this threshold determination of admissibility for any of the extraneous offenses in this case."

Appellant's argument on appeal does not comport with his objection and arguments at trial, and thus, appellant has failed to preserve error on the issue of whether the court admitted the evidence without holding a proper threshold inquiry. *See* Tex. R.App. 33.1(a) (requiring a specific objection to preserve error for appellate review); *Guevara v. State*, 97 S.W.3d 579, 583 (Tex.Crim.App.2003) (holding that the appellant failed to preserve error because the objection at trial did not comport with the complaint raised on appeal).[3] Accordingly, appellant's second issue is waived.

## B. The trial court conducted a proper threshold inquiry.

■ Regardless of appellant's failure to preserve error, we hold that the trial court conducted a proper threshold inquiry. Appellant argues that the trial court "clearly [did] not understand the obligation to make a threshold inquiry into the proof," and the State "did not tell the Court what the testimony would entail or describe any

---

3. *See also Sauceda v. State*, No. 14–980741–CR, 2000 WL 19209, at *2 (Tex.App.-Houston [14th Dist.] Jan. 13, 2000, no pet.) (mem. op., not designated for publication). In *Sauceda*, the defendant requested that the trial court hold a hearing outside the presence of the jury to determine whether the State "has proved any extraneous offense beyond a reasonable doubt." *Id.* at *3. We reasoned that the request was not specific enough to complain on appeal about the trial court's failure to conduct a threshold inquiry. *Id.* Similar reasoning applies here. Appellant's objection did not allow the trial court to take further action to cure any alleged deficiency in the court's threshold inquiry. *See Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App.2004) (discussing the reasons for requiring specific objections).

evidence it intended to offer in order for the Court to make the appropriate threshold inquiry."

The record, however, contradicts appellant's assertions. When appellant requested a hearing outside the presence of the jury to make an objection before the punishment phase of the trial, the court excused the jury and specifically explained, "State, why don't you tell me what it is that you plan on putting on, who you're putting on, what they're going to testify to, all that." The State then proceeded to make an offer of proof:

> The State: We have an extraneous murder. It was actually committed before this murder. I have—let me count. I have two first responders. I have a CSU unit who recovers bullets. The bullets recovered in the case in chief is another box of bullets that tie to this scene. So, I'm recalling that CSU. I have the CSU from the scene of the second—of this murder, the punishment murder. I have two investigators that actually did two murder squads in this murder. And so, I have two investigators. I have the [ballistics expert who testified during guilt-innocence]. I have the ME who did the autopsy. And I also have a ballistics examiner from the Sheriff's Office. . . . I also have—he was arrested with the murder weapon at some point. And so, I have the arresting officers from when he was arrested with the murder weapon.

> The Court: Okay. Good. Let me just ask you a few questions. Is—first of all, what's the date of that previous murder? If this was August 16th, 2008—

> The State: This happened on October 20th, 2007.

> The Court: Okay. And you said he was arrested with the murder weapon?

> The State: On December 30th of 2007.

> The Court: December 30th, 2007. Ok And is that—that's a different firearm than what was presented in this case, obviously?

> The State: Yes, your Honor.

> The Court: Okay. So, he was arrested—was he arrested on December 30th of 2007?

> The State: He was arrested for public intoxication on December 30th, 2007. They recovered the weapon. At the time they did not link the weapon at that time.

> . . .

> The Court: Now, the Court is just curious. What kind of gun was it that he was found in possession of?

> The State: In this case it was a 10–millimeter Glock. The bullets—this is how we link him, Judge. First of all, the murder happened within the same block as where the SWAT stand-off happened. The victim in this case was shot multiple times just as the victim in the case in chief. The shell casings at the scene come back to the gun that was with Mr. Palomo, as well as the bullets found in his room during the other murder also tie back to the shell casings.

> The Court: Which is one of the boxes of ammunition that you introduced in this trial? . . .

> The State: It was one of the boxes in the picture, but we haven't actually introduced the box.

> The Court: Okay. Well, [appellant's trial counsel], I'm going to—again, I'm going to deny your objection.

The trial court also said it would instruct the jury that the State had to prove an extraneous offense beyond a reasonable doubt and "then basically it's in [the jury's] hands." Although the trial court never

explicitly ruled that a rational jury could find beyond a reasonable doubt from this evidence that appellant was criminally responsible for the extraneous murder, the State's proffer and the court's questions show that the court indeed held a threshold inquiry prior to admitting the extraneous offense evidence. *See Arzaga v. State,* 86 S.W.3d 767, 781 (Tex.App.-El Paso 2002, no pet.) (holding that the State's oral proffer was sufficient for the trial court to make the threshold determination; explaining that a "trial court may determine whether there is sufficient evidence through an oral or written proffer of evidence, motions, pretrial hearings, and the trial, including any bench conferences"); *Mann v. State,* 13 S.W.3d 89, 94–95 (Tex. App.-Austin 2000) (holding that a proper threshold inquiry consisted of an oral proffer from the State, and no evidentiary hearing was required), *aff'd* 58 S.W.3d 132 (Tex.Crim.App.2001); *Welch v. State,* 993 S.W.2d 690, 697 (Tex.App.-San Antonio 1999, no pet.) (holding that a proper threshold inquiry consisted of a written proffer from the State); *see also Jackson v. State,* 65 S.W.3d 317, 321 (Tex.App.-Waco 2001, no pet.) (holding that the trial court impliedly determined that the jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense because the trial court admitted the evidence); *cf. Rojas v. State,* 986 S.W.2d 241, 250 (Tex.Crim.App.1998) (presuming that a trial court performed a required Rule 403 balancing test when the record showed that the court obtained the necessary information to make the determination and subsequently overruled the defendant's objection to the admission of the evidence).

Appellant's second issue is overruled.

## C. The trial court did not abuse its discretion in admitting the evidence.

■ Appellant's third issue is as follows: "Did the State fail to prove the extraneous offenses beyond a reasonable doubt?" Although appellant references the actual testimony of witnesses during the punishment phase of the trial, he cites no cases that suggest we should perform any type of evidence-sufficiency review for extraneous offenses alleged during punishment. In a recent unpublished opinion from this court, we construed an argument identical to appellant's as a challenge to the sufficiency of the evidence supporting the extraneous offense. *See Ulloa v. State,* No. 14–10–00161–CR, 2011 WL 2462193, at *3 (Tex.App.-Houston [14th Dist.] June 21, 2011, no pet.) (mem. op., not designated for publication). We then noted that courts of appeals generally do not review the sufficiency of the evidence supporting an extraneous offense presented during punishment. *Id; see also* 43A George E. Dix & John M. Schmolesky, Texas Practice Series: Criminal Practice and Procedure § 51.36 (3d ed. 2011) ("Generally, the courts of appeals have refused to conduct evidence review of juries' possible conclusions that the State proved [unadjudicated prior] offenses by the required proof of beyond a reasonable doubt.").

Rather, courts of appeals have construed such evidence-sufficiency challenges as challenges to the admission of the evidence under an abuse of discretion standard. *See Malpica v. State,* 108 S.W.3d 374, 378–79 (Tex.App.-Tyler 2003, pet. ref'd) ("[T]he only review possible of the sufficiency of the proof of an extraneous offense introduced at the punishment stage is a review under an abuse of discretion standard of the trial judge's threshold ruling on admissibility."); *Thompson v. State,* 4 S.W.3d 884, 886 (Tex.App.-Houston [1st Dist.] 1999, pet ref'd) ("[W]e do not review the sufficiency of the evidence of an extraneous offense to support the

jury's assessment of punishment. We construe appellant's complaint as a challenge to the admission of the extraneous offense evidence."); *see also Wilson v. State*, 15 S.W.3d 544, 548–49 (Tex.App.-Dallas 1999, pet. ref'd) (holding that factual sufficiency review does not apply for reviewing evidence of an unadjudicated extraneous offense partly because "review of extraneous offenses at punishment concerns only an evidentiary issue").

One of the reasons for not reviewing the sufficiency of the evidence to support extraneous offenses raised during punishment is because there is no actual finding by the jury that the defendant committed the extraneous offense. *See Thompson*, 4 S.W.3d at 886. We cannot determine whether the jury found beyond a reasonable doubt that appellant was criminally responsible for the extraneous offense; nor can we determine if any such finding even affected the jury's determination of punishment. *See id.*

Accordingly, we review the trial court's decision to admit the evidence for an abuse of discretion. Reviewing the transcript of the threshold inquiry discussed above, we conclude that the trial court did not abuse its discretion when it implicitly ruled that a rational jury could find appellant criminally responsible for the extraneous murder beyond a reasonable doubt. The State intended to introduce evidence that (1) appellant possessed the murder weapon when he was arrested two months after the murder, (2) shell casings from the type of bullets found in appellant's bedroom were found at the murder scene, and the shells had similar toolmarkings, (3) the victim was killed near the Clarewood Garden Apartments, and (4) the victim was shot in a manner consistent with the killing of Perez—at close range and with multiple bullets. It is not outside the zone of reasonable disagreement to conclude that

evidence of the foregoing assertions, along with some of the evidence adduced during the guilt/innocence part of the trial, would allow a rational jury to find beyond a reasonable doubt that appellant committed the extraneous murder.

Appellant's third issue is overruled. Having overruled all of appellant's issues, we affirm the trial court's judgment.