**Affirmed and Memorandum Opinion filed July 24, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-10-01091-CR

———————————

## RICARDO LEAL GAMINO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 268th Judicial District Court
Fort Bend County, Texas
Trial Court Cause No. 08-DCR-050461

## MEMORANDUM OPINION

A jury convicted appellant Ricardo Leal Gamino of evading detention with a vehicle and assessed appellant's punishment at two years' imprisonment and a $10,000 fine. Appellant urges on appeal that the evidence is insufficient to support his conviction. We affirm.

BACKGROUND

On the night of September 27, 2008, four uniformed, off-duty police officers employed with the Fort Bend County Sheriff's Office were working as private security guards, patrolling the parking lot around the Fort Bend County Fairgrounds.

Officer Sonny Colunga testified that he saw a brown Ford truck "driving at a high rate of speed and swerving from left to right" through the crowded parking lot around 11:20 p.m. Colunga testified that he shined his flashlight at the truck and "scream[ed]" for the driver to stop. The driver, whom Colunga later identified as appellant, came to a stop, and Colunga approached the truck's open driver's-side window. Colunga testified that he asked why appellant was driving so fast, and appellant responded, "I'm sorry[,] officer, I didn't see you," then "took off again, pretty fast." Colunga radioed the make, color, license plate number, and direction of travel of the truck to the other officers who were patrolling the parking lot on all-terrain vehicles ("ATVs"). Officers Reid Rader, William Butera, and Carlos Castillo testified that Colunga also reported that appellant's headlights were turned off. Rader and Butera further testified that Colunga said appellant was possibly intoxicated.[1]

Rader and Butera each testified that they soon spotted a truck matching Colunga's description with its lights turned off, travelling at what Rader estimated to be about "45 miles an hour." Rader testified that they began pursuit on their ATVs, and that he was able to catch up to appellant's truck when appellant slowed to make a left turn. Rader stated that he drove into and through a ditch alongside the truck and told appellant to stop through appellant's open driver's-side window. Rader, who was wearing a Fort Bend Sheriff's Department uniform, testified that appellant looked directly at him. Rader claimed he yelled a second time, "Sheriff's office. Stop the truck." Although he acknowledged that there were "noises out there," Rader testified that he was "sure"

---

[1] Colunga testified that he did not recall whether he made either of these statements.

appellant could hear him and that there was "no doubt he saw who I was and obviously what I wanted."

Rader testified that appellant continued driving until a line of traffic forced him to stop "abruptly." Butera testified that he stopped his ATV behind the truck, and Butera and Rader both testified that Rader stopped his ATV on the left side of the truck and approached appellant's driver's-side door on foot. Rader testified that he told appellant, "You need to stop. I need you to get out of the truck." Butera testified that he "could hear [Rader] and see him telling [appellant] to stop the vehicle and get out of the truck." Both officers testified that appellant looked in his driver's-side mirror, shifted the truck into reverse, and began backing up. Rader also testified that he heard appellant say, "I'm backing up." The officers testified that appellant's vehicle struck Butera's ATV, pinning Butera's leg between the ATV and the truck. Rader testified that he told appellant to "come out." When appellant refused, Rader reached through the window, opened the driver's-side door, and tried to pull appellant from the truck. However, Rader testified that he could not pull appellant out by himself because appellant was resisting and holding onto the steering wheel.

Castillo testified that when he arrived on the scene, he witnessed Butera yelling in pain behind the truck as Rader was trying to remove appellant from the truck. Castillo testified that he immediately assisted Rader and that they "struggled" with appellant and had to use force to pull him out because he "did not want to come out of the vehicle." Castillo testified that after handcuffing appellant, Castillo got in the truck and moved it forward to free Butera's leg.

Colunga, who was driving a golf cart that was much slower than the ATVs, testified that he caught up with the other officers and saw the same brown truck that he had stopped earlier. He stated that he saw "the same driver" handcuffed on the ground with officers around him.

3

Appellant testified to a very different version of events. He stated that as he began to drive toward the exit, he heard somebody yell, "Your headlights are off." Appellant testified that he turned his headlights on, continued driving, and responded, "Appreciate it." He claimed that he looked back and only saw somebody "in a white T-shirt." He testified that he did not know whether that person was a law enforcement officer and did not see a golf cart, an ATV, or anybody wearing a law enforcement uniform.

Appellant testified that he drove through the parking lot and stopped near the entrance to the fair to let pedestrians cross in front of his truck. He claimed that—without any warning or orders to exit the truck—four officers pulled him from the truck, threw him on the ground, and "started kneeing [him] in the back." Appellant further testified that he never put his truck in reverse or backed up. His theory at trial was that Butera ran into the back of appellant's truck and that the officers were "trying to just come up with something to mask the guy on the four-wheeler that hit [his truck]."

Appellant denied that he was ever "driving recklessly" at "45 miles an hour." He claimed that he took a different route through the parking lot than the officers testified he took, and that Rader never drove alongside his truck. Appellant testified: "No officers never [sic] told me to stop. I didn't see one officer until I got to the front of the fair and I seen [sic] [an officer] standing at the entrance."

Brandi Echol, a probation officer who met with appellant, testified that appellant told her "that upon attempting to back up his vehicle, Deputy Butera falsely accused him of striking him with his vehicle," which Echol understood to be an admission that appellant backed up his truck. She testified that appellant "indicated to [her] that he failed to activate his headlights on his vehicle" and "admitted that he was under the influence of prescription medications." Appellant, who has two prior convictions for driving while intoxicated, also admitted at trial that he drank two margaritas at the fair. However, appellant testified that he was not drunk, and the State did not charge him with driving while intoxicated.

4

A jury convicted appellant of the felony of evading detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04 (a), (b)(1) (West 2011). Appellant argues in one issue on appeal that we should reverse his conviction because (1) the record contains insufficient evidence showing that appellant knew the officers were peace officers attempting to arrest or detain him; and (2) appellant's detention was not lawful, as the officers failed to comply with several sections of the Texas Transportation Code regarding safe ATV operation.

## ANALYSIS

### I.     Knowledge of Attempted Detention by Peace Officers

Appellant first argues that we must reverse his conviction because the record contains insufficient evidence showing that appellant knew the officers were peace officers attempting to arrest or detain him. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)). The jury is the exclusive judge of the credibility of witnesses and the weight to be given to the evidence. *Id.* (citing *Isassi*, 330 S.W.3d at 638). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

A person commits the offense of evading detention with a vehicle if he intentionally flees in a vehicle from a person he knows is a peace officer attempting lawfully to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1). Therefore, for an individual to be guilty of evading detention with a vehicle, it is essential that the State prove that the individual knew a peace officer was attempting to arrest or detain him. *Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986). Appellant first argues that the facts prove

5

he did not know the officers were peace officers attempting to arrest or detain him because the incident occurred at night and because Rader was not in a properly marked police vehicle equipped with sirens or emergency lights. Appellant asserts that this case is comparable to *Redwine v. State*, 305 S.W.3d 360 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd), in which this court reversed a conviction for evading arrest with a vehicle because the appellant had no way to know that the officers were attempting to arrest him while he was driving: the officers testified that they followed the appellant from a distance, were unsure as to whether they ever turned their emergency lights on, and ordered appellant to stop by shouting, "Sheriff!" only after the appellant had already parked and exited his vehicle. *Id.* at 361–62.

Here, by contrast, the State presented evidence that the officers did make a show of authority while appellant was driving. Colunga testified that he was wearing a sheriff's department uniform when he first stopped appellant, who responded, "I'm sorry[,] officer, I didn't see you." Rader testified that when he caught up with appellant, Rader drove alongside appellant's truck, identified himself as a sheriff's officer, and twice told appellant to stop. Moreover, Rader—who also was wearing a sheriff's department uniform—testified that appellant looked at Rader and that there was "no doubt [appellant] saw who I was and obviously what I wanted." Rader testified that appellant said, "I'm backing up," after Rader already had approached appellant's window on foot and ordered him to stop and exit the truck. According to Rader and Butera, appellant then put his truck in reverse and "intentionally" backed up in the direction of his "only avenue of escape." This testimony, which is corroborated, in part, by appellant's admissions to probation officer Echol, supports an inference that appellant knew the men on the ATVs were peace officers attempting to detain him. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.").

6

Appellant argues that the State's evidence nonetheless was insufficient because Rader's testimony that he pulled alongside appellant's truck must have been false. Appellant urges—without citation to the record—that Rader could not have pulled alongside appellant's truck because "testimony revealed" that traffic was congested, pedestrians were in the roadway, the roadway was too narrow for two cars to be side-by-side, and Butera testified that he and Rader stayed behind appellant's truck. First, we note that the officers testified that heavy traffic blocked their path only after appellant stopped his truck near the entrance, and that pedestrians were present in the parking lot—not that they were blocking the officers' path. Moreover, Rader testified that he pulled his ATV into a ditch next to the road, not side-by-side with appellant's truck on the narrow roadway. And, even if Butera's testimony that he and Rader "got in behind [appellant] and followed him until he stopped" is considered contrary to Rader's testimony that he pulled alongside appellant's truck, the jury was free to choose which officer's testimony to believe. *See id.*

Appellant further asserts that the evidence is insufficient because "[t]here simply was too much noise for [him] to hear what someone was saying from another vehicle." However, the jury also could have chosen to believe Rader's testimony that, although "[t]here were noises out there" from the crowds and vehicles, he "yelled" and was "sure" that appellant could hear him. *See id.* Furthermore, appellant does not argue on appeal that it was too noisy to hear Rader's orders to stop when, as Rader testified, Rader was standing next to the truck.

Appellant finally argues that he had no reason to suspect that peace officers were attempting to detain him because he had no reason to flee. While evidence that appellant was committing a crime when officers attempted to detain may establish that appellant had a motive to flee from police, appellant cites no authority suggesting that such evidence is necessary.[2]

---

[2] Regardless, there is ample evidence in the record from which the jury could have found that

While appellant directly refuted much of the officers' testimony and claims that "no rational trier of fact could believe" their version of the events, a jury could have chosen to believe the testimony of the officers over that of a man with an extensive criminal record who admitted that he did not "have credibility." *See id.*; *see also Rhoades v. State*, 84 S.W.3d 10, 13–15 (Tex. App.—Texarkana 2002, no pet.) (holding that officer's testimony, which was refuted by appellant, was sufficient to support conviction of evading arrest even though officer was in unmarked car and it was beginning to get dark; officer testified that appellant slowed down when officer gave hand signals to stop, but appellant drove away when she saw badge). We overrule appellant's issue, to the extent it is based on this argument.

## II.  Lawfulness of Attempted Detention

Appellant also argues on appeal that he cannot be guilty of evading detention because the State failed to prove that the officers were attempting lawfully to detain or arrest him, in that the officers did not have eight-foot poles with triangular orange flags attached to their ATVs, were not properly certified to operate the ATVs on public roads, and were not wearing helmets, as required by the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 663.031(a)(1), 663.034(1), 663.037(g)(2) (West 2011). Appellant's contention that he cannot be found guilty because of this alleged conduct of the officers is without merit.

The lawfulness of the attempted detention or arrest is an element of the offense that must be proven by the State. *Pina v. State*, 127 S.W.3d 68, 75 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (citing *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston

appellant had such a motive. We disagree with appellant's assertion that the State's choice not to charge appellant with a DWI shows that the State "agreed" he was not intoxicated. Appellant admitted that he drank two margaritas at the fair, and Echol testified that appellant told her that he was under the influence of prescription medication at the time of arrest. Appellant has two prior DWI convictions, and had he been charged with a third, it would have been a felony offense. *See* TEX. PENAL CODE ANN. § 49.09(b)(2) (West 2011). Furthermore, appellant testified that he was driving while his license may have been suspended, and the officers testified that appellant was driving recklessly without headlights when they attempted to detain him.

[1st Dist.] 2003, pet. ref'd)). However, appellant cites to no authority suggesting that peace officers must follow all traffic laws in order for an attempted detention or arrest to be lawful. Such a requirement would lead to the absurd result that police would be prohibited, for example, from pursuing a suspect who is exceeding the speed limit. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 385–86 (2007) ("It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness."); *Miles v. State*, 241 S.W.3d 28, 44–46 (Tex. Crim. App. 2007) (rejecting argument that arresting citizen's traffic violations during high-speed chase necessarily rendered arrest unlawful for purposes of Texas statutory exclusionary rule under Texas Code of Criminal Procedure article 38.23). Rather, the lawfulness requirement refers to whether the officer has, for instance, "reasonable suspicion" to support a detention or probable cause to support a warrantless arrest. *See, e.g.*, *Guillory*, 99 S.W.3d at 741; *Pina*, 127 S.W.3d at 75; *Wright v. State*, 855 S.W.2d 110, 112 (Tex. App.—Houston [14th Dist.] 1993, no pet.). Appellant does not argue that the officers did not have reasonable suspicion to detain him, and we do not consider such an argument in analyzing appellant's issue on appeal.

We overrule appellant's issue.

## CONCLUSION

Having overruled appellant's only issue on appeal, we affirm the judgment of the trial court.


/s/     Sharon McCally
         Justice

Panel consists of Justices Frost, McCally, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).

9