

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00410-CR

**BRIAN CHARLES JONES,**

                                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                        **Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 36853CR

## MEMORANDUM  OPINION

In this appeal, appellant, Brian Charles Jones, challenges his conviction for evading arrest with a motor vehicle.  *See* TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2013).  Because we conclude that the trial court properly determined that the charged offense was a third-degree felony, and because the record does not indicate that the trial court improperly considered extraneous-offense evidence during the punishment phase of trial, we affirm.

## I.    BACKGROUND

Adam Sowder, a sergeant with the Ellis County Sheriff's Office, testified that, on February 7, 2012, he observed a silver Oldsmobile Aurora traveling on Criddle Street in Ellis County, Texas. Sergeant Sowder stated that the driver of the Aurora committed numerous traffic violations, including failing to signal intent to turn right, failure to stop at a stop sign, and failure to stop at a designated stopping point. When the driver of the Aurora turned onto Williams Street, Sergeant Sowder activated the overhead emergency lights and siren on his vehicle. Despite the fact that Sergeant Sowder's overhead emergency lights and siren had been activated, the driver of the Aurora did not stop. Sergeant Sowder described the scene as follows:

> The vehicle continued on to Williams. And at East Ross, I believe, there's also another stop sign. At that stop sign again failed to signal intent, didn't stop at the stop sign or the designated stopping point. The vehicle then turned onto East Ross and then began to pick up speed.

When he began following the Aurora, Sergeant Sowder recalled driving at about twenty or twenty-five miles an hour; however, upon turning onto East Ross, Sergeant Sowder increased his speed to try to catch up with the Aurora. Sergeant Sowder estimated that the Aurora was travelling at seventy miles per hour in a thirty-mile-per-hour zone.

Eventually, the driver of the Aurora "made a wide swing as if he was going to try to take the corner of Ross and Brown Street. The vehicle then jumped across—went across Brown Street striking the curb and then launching up into a tree and hitting a guide wire." After catching up with the Aurora, Sergeant Sowder exited his patrol

vehicle with his duty weapon drawn. He saw the driver of the vehicle "trying to exit out real quickly out of the passenger side door." Sergeant Sowder commanded the driver of the vehicle to "show us his hands" and "to get on the ground." The driver put his hands in the air but refused to get on the ground. Sergeant Sowder "went up and grabbed the individual to help put him to the ground so that he could be put in handcuffs." Later in his testimony, Sergeant Sowder identified appellant as the driver of the Aurora.

Appellant was subsequently charged by indictment with evading arrest with a motor vehicle, a third-degree felony. *See id.* § 38.04(b)(2)(A). The indictment also referenced two of appellant's prior felony convictions for forgery and unlawful possession of a controlled substance. Thereafter, appellant filed a motion to quash the indictment, arguing that, in light of statutory amendments to the evading-arrest statute passed in 2011, the statutory penalty for the offense should be a state-jail felony, rather than a third-degree felony. After a hearing, the trial court denied appellant's motion to quash.

The case proceeded to trial before a jury. At the conclusion of the evidence, the jury found appellant guilty of the charged offense. Appellant elected for the trial court to assess punishment. Because appellant had been convicted of third-degree-felony evading arrest with a motor vehicle, and because appellant had two prior felony convictions, the trial court assessed punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed a motion for new

trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. THE PUNISHMENT RANGE

In his first issue, appellant complains that he should have been punished for a state-jail felony, rather than a third-degree felony, because the relevant provision of the amendments to the evading-arrest-with-a-motor-vehicle statute is invalid. In other words, appellant challenges the validity of a provision to the amended evading-arrest-with-a-motor-vehicle statute that elevated the range of punishment for first-time offenders who commit the offense of evading arrest with a motor vehicle.

On June 4, 2014, the Court of Criminal Appeals rejected this argument as it pertains to the evading-arrest-with-a-motor-vehicle statute. *See generally Ex parte Jones*, No. PD-1158-13, 2014 Tex. Crim. App. LEXIS 763 (Tex. Crim. App. June 4, 2014).[1] Specifically, the Court of Criminal Appeals recognized the following:

> As initially drafted in March 2011, Senate Bill 1416 added tire-deflation devices to the list of prohibited weapons in Section 46.05 of the Texas Penal Code in order to address the problems caused by their use in evading arrest and the resulting threat to the safety of law enforcement and the general public. . . .
>
> At the time at which each legislative chamber voted for its enactment, Senate Bill 1416's title read, "An Act relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire deflation device; providing criminal penalties." H.J. of Tex., 82nd Leg., R.S. 4375 (2011); *see* S.J. of Tex., 82nd Leg., R.S. 4150-51 (2011). Although the caption did not mention evading arrest, identical bills were adopted and passed by the Texas House of Representatives and the Texas

---

[1] *See also Scott v. State*, No. 10-13-00159-CR, 2014 Tex. App. LEXIS 3380, at **5-6 (Tex. App.—Waco Mar. 27, 2014, no pet.) (mem. op., not designated for publication) (citing *Adetomiwa v. State*, 421 S.W.3d 922, 924-27 (Tex. App.—Fort Worth 2014, no pet.)).

Senate, and the substances of those bills included elevating the penalty for evading arrest in a motor vehicle. *See* H.J. of Tex., 82nd Leg., R.S. 4316 (2011); S.J. of Tex., 82nd Leg., R.S. 4151 (2011) (passing bill).[2] More specifically, as enrolled and enacted, Senate Bill 1416 included five sections that (1) amended Section 46.01 of the Texas Penal Code to provide a definition of what constitutes a tire-deflation device, (2) amended Section 46.05 of the Texas Penal Code to make a tire-deflation device a prohibited weapon, (3) amended Section 38.04 of the Texas Penal Code to elevate the punishment range for first-time offenders evading arrest in a motor vehicle and to provide for penalties for offenses where a tire-deflation device is used while an actor is in flight, and (4) and (5) provided for an effective date of September 1, 2011. Subsequent to the adoption of the bill by the Legislature, the caption was made to conform to the substance of the bill that was passed; the caption specifically mentioned penalties for evading arrest in a motor vehicle.

*Id.* at **4-7. Like the defendant in *Ex parte Jones*, appellant argues that Senate Bill 1416,

which amended Section 38.04(b) of the Texas Penal Code, violates the single-subject

---

[2] As referenced by the Court of Criminal Appeals in *Ex parte Jones*, Senate Bill 1416 provided the following, in relevant part:

AN ACT

Relating to the creation of the offense of possession, manufacture, transportation, repair, or sale of a tire-deflation device and to the offense of attempting to evade arrest through the use of a vehicle or a tire deflation device; providing criminal penalties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

. . . .

SECTION 3. Subsections (b) and (c), Section 38.04, Penal Code, are amended to read as follows:

(b) An offense under this section is a Class A misdemeanor, except that the offense is: . . .

(2) a felony of the third degree if:

(A) the actor uses a vehicle while the actor is in flight [and the actor has been previously convicted under this section] . . . .

No. PD-1158-13, 2014 Tex. Crim. App. LEXIS 763, at **7-8 n.3 (Tex. Crim. App. June 4, 2014) (citing Enrolled Version of Senate Bill 1416, available at http://www.capitol.state.tx.us/tlodocs/82R/billtext/pdf/SB1416F.pdf.)

rule.  *See* TEX. CONST. art. III, § 35(a) (providing that "[n]o bill, (except general appropriation bills . . .) shall contain more than one subject").

However, in its analysis of Senate Bill 1416, the Court of Criminal Appeals stated that:

> The provisions in the bill have the same general subject:  imposition of criminal penalties described in the Texas Penal Code for offenses involving motor vehicles.  Furthermore, the provisions of the bill also have a mutual connection in that their enactment was intended to better protect law enforcement and the public from actors who evade arrest. . . .
>
> In applying the test to determine whether a particular enactment violates the single-subject rule, a reviewing court initially presumes the validity of the challenged statute and places the burden of proof on the statute's challenger.  The court also liberally construes both the constitutional provision and the questioned statute in favor of constitutionality.  Viewing Senate Bill 1416 in favor of finding it constitutionally compliant, we conclude that, because the penalties for the offenses described in the bill pertain to criminal offenses related to motor vehicles, they have a single subject, and because each of these offenses relates directly or indirectly to the offense of evading arrest, they have a mutual connection to one another.

*Id.* at **11-14 (internal citations omitted).

Based on the foregoing, we cannot say that the trial court erred in denying appellant's motion to quash the indictment based on appellant's complaints about the 2011 amendments to the evading-arrest-with-a-motor-vehicle statute.[3]  *See State v. Moff,*

---

[3] Appellant raises two alternative arguments in his first issue; however, both of these alternative arguments appear to be variations on his assertion that Senate Bill 1416 violates the single-subject rule. Because the Court of Criminal Appeals has concluded that Senate Bill 1416 does not violate the single-subject rule, we are not persuaded by appellant's alternative arguments. *See id.* at **11-14.  However, to the extent that appellant argues that Senate Bill 1416 renders section 38.04 of the Texas Penal Code ambiguous, after applying the relevant rules of statutory construction, we disagree.  *See* TEX. PENAL CODE ANN. § 38.04(b)(2) (providing that a person commits the offense of third-degree evading arrest if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him using "a vehicle while the actor is in flight"); *see also Dobbs v. State*, No. PD-0259-13, 2014 Tex. Crim. App. LEXIS 908, at *16 (Tex. Crim. App. June 25, 2014) ("[A]s long as the

154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (providing that an appellate court reviews de novo a trial court's denial of a motion to quash an indictment); *see also DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988) (stating that a motion to quash should be granted only when the language describing the accused's conduct is so vague or indefinite that it fails to give the accused adequate notice of the acts he allegedly committed). Accordingly, we overrule appellant's first issue.

### III. EXTRANEOUS-OFFENSE EVIDENCE DURING THE PUNISHMENT PHASE

In his second issue, appellant asserts that the trial court abused its discretion in considering at the punishment phase of trial acts of alleged misconduct that had not been proven beyond a reasonable doubt.

Section 3(a) of Article 37.07 of the Texas Code of Criminal Procedure allows the State to introduce during punishment relevant evidence of an extraneous crime or bad act so long as the evidence would allow a jury to conclude beyond a reasonable doubt that the defendant committed or could be held criminally responsible for the crime or act. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2013); *see Smith v. State*, 227 S.W.3d 753, 759-60 & n.16 (Tex. Crim. App. 2007); *see also Palomo v. State*, 352 S.W.3d 87, 91-92 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The trial court makes the

---

meaning of a statute is not ambiguous or the application absurd, we are bound to apply the plain language of the statute as it is written . . . ."); *Luna v. State*, 402 S.W.3d 849, 851 (Tex. App.—Amarillo 2013, no pet.) ("Upon looking at the statutory verbiage (of section 38.04 of the Texas Penal Code), the Court encountered 'nothing ambiguous about the' language." (quoting *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005))). We believe that appellant's interpretation of the amendments renders the amendments irreconcilable. *See* TEX. GOV'T CODE ANN. § 311.025(b) (West 2013) ("Except as provided by Section 311.031(d), if amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each. If the amendments are irreconcilable, the latest in date of enactment prevails.").

threshold decision regarding admissibility and may not admit extraneous-offense evidence unless the evidence is such that a jury could rationally find the defendant criminally responsible for the extraneous offense. *See Smith*, 227 S.W.3d at 759-60; *see also Palomo*, 352 S.W.3d at 92. Ultimately, the factfinder must decide whether the extraneous offense was proven beyond a reasonable doubt. *Palomo*, 352 S.W.3d at 92. We review a trial court's decision to admit or exclude extraneous-offense evidence during punishment for an abuse of discretion. *See Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (plurality op.).

During the punishment phase of trial, Tony Price, an investigator with the Ellis County Sheriff's Office, testified that he is familiar with appellant. Price explained that he first became acquainted with appellant in December 2011, when several complaints were made about possible drug activity at a house owned by appellant. With the assistance of a confidential informant, law enforcement obtained a warrant to search appellant's house. On February 1, 2012, law enforcement executed the search warrant and found two syringes—one with a clear substance and the other with a red substance—a small, plastic baggy with what Price believed to be marihuana, and a round, red plate that "had the green, leafy substance which was mari[h]uana." Thereafter, Price submitted the items seized from appellant's house for testing.[4] Price noted that, based on the results of the tests, appellant was charged with possession of a

---

[4] Lab tests showed that both of the syringes and the plastic baggy contained varying amounts of methamphetamine.

controlled substance under one gram, unlawful possession of a firearm, and possession of marihuana under two ounces.

At this point in Price's testimony, appellant objected, arguing that "there's insufficient affirmative links tying these materials to Mr. Jones. And, of course, the Court's aware that the State has to prove the offense beyond a reasonable doubt for the Court to consider it in the punishment phase." The trial court overruled appellant's objection.

On cross-examination, Price acknowledged that appellant lived in the house with a woman and that appellant was not present at the house when the search took place. Price also testified that the plate was found in the living room that was set up as a bedroom. Police found the plastic baggy containing marihuana and the clear syringe in the bathroom connected to the master bedroom. Additionally, the syringe with a red substance "was found attached to the back of the freezer or the ice maker in the freezer of the kitchen." Later, Price admitted that appellant's ownership of the house is the only fact linking appellant to the substances found inside his house.

Also during the punishment phase, Nicholas Schindler, an investigator with the Ellis County Sheriff's Office, testified that, on October 25, 2012, he and another investigator encountered appellant while trying to serve a warrant on Dillon Murchison. When they realized that Murchison was not home, Schindler and Investigator Thompson parked their patrol car near Murchison's house to wait. Eventually, a vehicle identified as Murchison's pulled into the driveway of the house. Schindler and Thompson positioned their patrol car behind Murchison's vehicle and

attempted to make contact with the occupants of the vehicle. Apparently, two males and two females were inside Murchison's vehicle. When the investigators, who were wearing raid vests with the sheriff's department's name on the front, ordered the occupants to exit the vehicle, appellant, who was one of the passengers in the vehicle, took off running. Appellant was eventually apprehended.

Prior to closing arguments, appellant moved the trial court to disregard the testimony about the Murchison incident because "there's absolutely no offense whatsoever proved on that." After hearing arguments, the trial court denied appellant's motion to disregard. However, the trial court later noted the following:

> Now I want to be clear on this point. Immediately before beginning closing arguments, or rather at the close of the State's case when the State rested before you began to put on your evidence, you made a procedural motion to disregard the evidence. The Trial Court may have questioned the motion or denied the motion, but *I want to be clear that any concerns that you may have are included within the Trial Court's deliberation of this matter that the Trial Court finds the State has failed to prove any of its extraneous offenses beyond a reasonable doubt and they will not be included within the Trial Court's consideration and punishment in this case.*

(Emphasis added).

Based on the trial court's statement in open court, there is nothing in the record demonstrating that the trial court improperly considered extraneous-offense evidence that was not proven beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a); *see also Smith*, 227 S.W.3d at 759-60; *Palomo*, 352 S.W.3d at 92. And even if the trial court did consider the complained-of extraneous-offense evidence, appellant has not shown that he suffered any harm. *See* TEX. R. APP. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be

disregarded."); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the [factfinder's] verdict."); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) ("A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.").

In its closing argument, the State requested that the trial court impose a "very long sentence." Contrary to appellant's assertion, the mere fact that the trial court agreed with the State's recommendation and sentenced appellant to life imprisonment does not conclusively demonstrate that the trial court improperly considered extraneous-offense evidence. This is especially true considering appellant's extensive criminal history that was properly admitted into evidence, including multiple felony convictions for possession of a controlled substance, a felony conviction for possession of anhydrous ammonia in an unapproved container, a felony conviction for possession and transport of certain chemicals with intent to manufacture, a felony conviction for assault on a public servant, a felony conviction for retaliation, multiple felony convictions for forgery, a conviction for class A misdemeanor assault—family violence, and a conviction for theft in an amount greater than $50 but less than $500. *See King*, 953 S.W.2d at 273 (stating that the potential harm of the complained-of evidence can be "defused by properly admitted evidence"). Therefore, we cannot say that the trial court abused its discretion if it had considered the complained-of extraneous-offense

evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a); *see also Mitchell*, 931 S.W.2d at 953; *Palomo*, 352 S.W.3d at 92. We overrule appellant's second issue.

## IV.   CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed September 11, 2014
Do not publish
[CRPM]

