**Affirmed and Memorandum Opinion filed April 28, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00109-CR

**KEVIN ANTONIO OWENS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

### On Appeal from the 248th District Court
### Harris County, Texas
### Trial Court Cause No. 1316170

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Kevin Antonio Owens of capital murder committed in the course of a robbery, and he was sentenced to life without parole. *See* Tex. Penal Code Ann. §§ 12.31(a)(2), 19.03. In two issues, appellant contends the evidence is legally insufficient and the trial court erred by admitting evidence of an extraneous offense. We affirm.

# I. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends the evidence is legally insufficient to support the jury's verdict because the evidence does not establish beyond a reasonable doubt that appellant formed the intent to rob the complainant before or at the time of the murder.

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (quotation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing historical facts that support conflicting inferences, we must presume that the jury resolved any such conflicts in the State's favor, and we must defer to that resolution. *Whatley*, 445 S.W.3d at 166. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Id.* (alteration in original) (quotation omitted).

Appellant was charged with capital murder by intentionally committing a murder in the course of committing or attempting to commit a robbery. *See* Tex. Penal Code Ann. § 19.03(a)(2). The State had the burden to prove beyond a reasonable doubt that appellant formed the intent to rob before or at the time of the murder. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). "Proof of robbery committed as an afterthought and unrelated to a murder is not sufficient evidence of capital murder." *Id.* However, evidence is legally sufficient to prove the intent to rob if "the jury could rationally conclude beyond a reasonable doubt that the defendant formed the intent to obtain or maintain control of the victim's

property either before or during the commission of the murder." *Id.*; *see also* Tex. Penal Code Ann. § 29.02 (robbery requires "intent to obtain or maintain control of the property"). A jury may infer the defendant's intent to rob based on the conduct and words of the defendant. *See Conner*, 67 S.W.3d at 197; *McGee v. State*, 774 S.W.3d 229, 234 (Tex. Crim. App. 1989); *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant.").

Here, the jury heard evidence that the decedent, Fusham Zhang, owned several condominium units and rented them out to tenants. In the past, appellant had been one of Zhang's tenants, but appellant was living with his girlfriend across the hall from Zhang around the date of the murder. Appellant's girlfriend testified that appellant believed Zhang owed him money. She testified that appellant "was upset and he wanted his money back."

On the day of the murder, Zhang was with two new tenants in their apartment when he poured water through the screened-in patio onto some bushes. Some of the water splashed appellant, and appellant got upset. Appellant started yelling at Zhang about the water, but appellant then started saying that Zhang owed appellant money. Appellant pulled a large butcher knife from his pocket, cut through the screened-in patio, and pulled Zhang outside. Appellant said he would kill Zhang. Multiple witnesses testified that appellant was arguing with Zhang about money. One of the tenants testified that appellant told Zhang that Zhang owed appellant $2,500; the other tenant testified it was "around like 2,000, in that range."

Two other witnesses were walking down the sidewalk when the confrontation began. One of them testified that she saw Zhang and appellant arguing. Appellant was holding Zhang and asked, "Where's the money?"

3

Appellant was "ruffling [Zhang's] pockets trying to go in his pocket." It was "clear" to this witness that appellant "was trying to rob him." She saw appellant with the knife. Zhang was pleading for his life. Multiple witnesses heard Zhang saying that he did not have any money. Then, appellant stabbed Zhang in the neck, killing him. After threatening to kill several witnesses, appellant fled. He was apprehended later that day when he returned to the condominium complex.

In *Herrin v. State*, the Court of Criminal Appeals held that evidence of the defendant's belief that the decedent owed him money, coupled only with the fact that the decedent's wallet was missing, was insufficient to prove an intent to rob. *See* 125 S.W.3d 436, 442–43 (Tex. Crim. App. 2002). But here, there is ample evidence that appellant intended to rob Zhang. Appellant was demanding money from Zhang and "ruffling" through Zhang's pockets immediately before the murder. This evidence is sufficient for a rational jury to find beyond a reasonable doubt that appellant formed the requisite intent to rob Zhang before or during the murder. *See Conner*, 67 S.W.3d at 198 (evidence sufficient to prove the defendant's attempt to rob when a witness heard a man say "give me all your money" and saw the defendant shoot the decedent, although there was no evidence that money was taken from the decedent's cash register); *see also McGee*, 774 S.W.2d at 234 (suggesting that the "talisman of an intent to steal" would have been the appellant demanding money from the decedent before attacking him).

Appellant's first issue is overruled.

## II.   ADMISSION OF EVIDENCE

In his second issue, appellant contends that the trial court erred by permitting Houston Police Department Officer Iola Simpson to testify about appellant's resisting arrest and assault on her after the murder. Citing Rule 403 of the Texas

4

Rules of Evidence, appellant argues that the probative value of the testimony was substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 403.[1]

We review a trial court's decision to admit evidence for an abuse of discretion. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We must affirm so long as "the trial court's ruling was within the zone of reasonable disagreement." *Id.* We give deference to a trial court's decision under Rule 403 that "the probative value of evidence is not outweighed by the danger of unfair prejudice." *Id.* Under the rule, a trial court must balance two factors against four others:

(1) the inherent probative force of the proffered item of evidence; and
(2) the proponent's need for that evidence.

***versus***

(3) any tendency of the evidence to suggest a decision on an improper basis;
(4) any tendency of the evidence to confuse or distract the jury from the main issues;
(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and
(6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 201 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The rule presumes that the probative value of relevant evidence exceeds any danger of unfair prejudice, and a trial court should exclude evidence "only when there is a

---

[1] At the time of appellant's trial, Rule 403 stated: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403 (1998, amended 2015).

'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009).

Officer Simpson testified that she received a dispatch call to respond to a stabbing. She saw appellant near the crime scene and attempted to detain him as a possible suspect. Appellant was compliant at first, but when she attempted to cuff him for officer safety, he spun around with a large butcher knife and told her he was not going to jail. She identified State's Exhibit 35 as the knife.[2] Simpson grabbed appellant's arm and struggled with him. She pleaded, "Please don't stab me with this knife." He said, "Just let me go," and she responded, "I can't do that." He tried to get her gun, so she tried to do a "side arm, hip shoot," but he pushed her arm and she missed. During the struggle, the magazine clip came out of the gun, and she thought "this guy is trying to kill me for real." He pushed her and then fled as she fell backwards. She fired at him again but missed, and she fell to the ground, injuring her hip, elbow, and arm. Appellant escaped custody at that time.

Turning to the first factor identified above, Simpson's testimony was highly probative to establish guilt. The testimony showed appellant's spatial and temporal proximity to the murder scene, his flight from apprehension by police, and his possession of the murder weapon. *See, e.g., Palomo v. State*, 352 S.W.3d 87, 90–91 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (circumstantial evidence of guilt includes proximity to the murder scene near the time of the murder, flight from police, and possession of the murder weapon). In particular, the evidence of the aggravated assault upon Simpson during appellant's flight shows the lengths to which he was willing to go to escape apprehension for the

---

[2] Other witnesses identified State's Exhibit 35 as the knife appellant used to murder Zhang. It was found in an apartment complex near the murder scene.

murder, thus evidencing a consciousness of guilt. Under the second factor, we note that the State's case was strong, and the State did not necessarily need Simpson's testimony: four eyewitnesses to the murder identified appellant in open court, and other extraneous bad-act evidence was adduced (such as appellant's kidnaping and threatening the lives of the the two tenants who had been present with Zhang during the murder).

Under the remaining four factors, we note that extraneous offense evidence is inherently prejudicial and generally creates a risk that jurors will make a decision on an improper basis. *See, e.g.*, *Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994); *Plante v. State*, 692 S.W.2d 487, 494 (Tex. Crim. App. 1985). However, here the evidence did not have a strong tendency to confuse or distract the jury, particularly in light of the fact that the evidence did not consume an inordinate amount of time or merely repeat evidence already admitted. Simpson was one of fifteen witnesses, and her testimony was relatively brief. The jury was properly instructed in the charge on the use of extraneous offense evidence, so the jury was equipped to evaluate the evidence.

On balance, we cannot conclude that the trial court abused its discretion by admitting this evidence. There is not a clear disparity favoring exclusion.

Appellant's second issue is overruled.

### III. CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/    Sharon McCally
       Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).