ACCEPTED
01-14-01005-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/3/2015 2:18:34 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-01005-CR

## IN THE FIRST COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/3/2015 2:18:34 PM

CHRISTOPHER A. PRINE
Clerk

## HOUSTON, TEXAS

## HAROLD JOSEPH NORWOOD, JR., APPELLANT
## V.
## THE STATE OF TEXAS, APPELLEE

## BRIEF FOR THE STATE OF TEXAS

## CAUSE NUMBER 13CR1311
## IN THE 405th JUDICIAL DISTRICT COURT
## OF GALVESTON COUNTY, TEXAS

ATTORNEYS FOR THE STATE OF TEXAS

REBECCA KLAREN  ASSISTANT CRIMINAL DISTRICT ATTORNEY
       STATE BAR NO. 24046225

JACK ROADY   CRIMINAL DISTRICT ATTORNEY

600 59TH STREET, SUITE 1001
GALVESTON TX 77551
(409) 770-6004, FAX (409) 621-7952
rebecca.klaren@co.galveston.tx.us

**ORAL ARGUMENT WAIVED**

## <u>IDENTITY OF PARTIES AND COUNSEL</u>

Presiding Judge                                Honorable Michelle Slaughter

Appellant                                     Harold Joseph Norwood, Jr.

Appellee                                       The State of Texas

Attorney for Appellant                 James Bennett

     (Trial Only)                           Alvin, Texas

Attorney for Appellant                 Zachary S. Maloney

     (Appeal Only)                        League City, Texas

Attorney for State                       Matthew Shawhan & Bill Reed

     (Trial Only)                           Galveston, Texas

Attorney for State                       Rebecca Klaren

     (Appeal Only)                        Galveston, Texas

# TABLE OF CONTENTS

| SECTION | PAGE |
| --- | --- |

Identity of Parties and Counsel — ii

Table of Contents — iii

Index of Authorities — iv

Summary of the Argument — 2

Statement of Facts — 3

First Issue — 15

    There must be evidence a witness is an accomplice before a court is required to include an accomplice witness instruction in its charge. If the court should've included the instruction, but the defendant didn't object, the defendant must show he was egregiously harmed.

    How's there harmful reversible error when there's no evidence Lacy was an accomplice, Norwood didn't object to the charge, and Norwood made no argument he was egregiously harmed?

Argument and Authorities — 15

I.    Accomplice Witness Applicable Law — 15

II.    Lacy Was Not An Accomplice — 17

III.    Norwood Wasn't Egregiously Harmed: The Non-Accomplice Evidence Corroborates Lacy & Tends To Connect Norwood To The Murder — 20

IV.    Conclusion: No Ground For Reversal — 24

Second Issue                                                                25

Video proves Norwood walked towards the crime scene minutes before the victim's car was stolen. Video proves Norwood was driving the car minutes after the victim was left dying in his bakery parking lot. Norwood had the victim's car, his car key, and his cellphone.

Viewing the evidence in the light most favorable to the verdict, how's there insufficient evidence to prove Norwood murdered the victim?

Argument and Authorities                                                    25

I.      Relevant Sufficiency Law                                            25

II.     The Evidence Proves Norwood Killed The Victim                       27

Conclusion and Prayer                                                       30

Certificate of Service                                                      31

Certificate of Compliance                                                  31

# INDEX OF AUTHORITIES

**CASES**

*Adames v. State,* 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) .....................................25

*Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). .......................................20

*Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) ..................................17

*Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)......................................17

*Bingham v. State,* 913 S.W.2d 208, 211 (Tex. Crim. App. 1995).....................................16

*Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984).......................................22

*Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). ...................................26

*Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex. Crim. App. 1996)....................................21

*Ex parte Flores,* 387 S.W.3d 626, 641 (Tex. Crim. App. 2012) .....................................25

*Flores v. State*, 551 S.W.2d 364, 369 (Tex. Crim. App. 1977) .......................................28

*Garcia v. State,* 367 S.W.3d 683, 687 (Tex. Crim. App. 2012). ....................................26

*Gaston v. State,* 324 S.W.3d 905, 908 (Tex. App.---Houston [14th Dist.] 2010, pet. ref'd) ....................................................................................................................16

*Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)........................................26

*Griego v. State,* 337 S.W.3d 902, 903 (Tex. Crim. App. 2011).....................................26

*Herron v. State,* 86 S.W.3d 621, 631 (Tex. Crim. App. 2002)............... 16, 17, 21, 23, 24

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). .........................................26

*Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979) ....................................................26

*Joubert v. State,* 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). ...............................21

*Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) ................................21

*Mann v. State,* 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). ..................................20

*Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.---Houston [1st Dist.] 2005, pet. ref'd) ................................................................................................................ 28, 29

*Moron v. State,* 779 S.W.2d 399, 401 (Tex. Crim. App. 1985)...................................21

*Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013)....................................20

*Palomo v. State*, 352 S.W.3d 87, 90-91 (Tex. App.---Houston [14th Dist.] 2011, pet. ref'd)...............................................................................................................27

*Smith v. State,* 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). ................... 15, 16, 17, 19

*Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013)...................................25

*Warner v. State,* 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). ................................20

*Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).................................26

*Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). ..............................26

*Wygel v. State*, 555 S.W.2d 465, 469 n.3 (Tex. Crim. App. 1977)...............................19

*Zamora v. State*, 411 S.W.3d 504, 511 (Tex. Crim. App. 2013)............................ 15, 16

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 38.14. ..............................................................16

TEX. PENAL CODE § 19.02(b)(2)...........................................................................27

TEX. PENAL CODE §7.01 ........................................................................15

TEX. PENAL CODE §7.02(a) ...................................................................15

TEX. PENAL CODE §7.02(b) ............................................................. 15, 18

NO. 01-14-01005-CR

IN THE

COURT OF APPEALS

FOR THE

FIRST DISTRICT OF TEXAS

HOUSTON, TEXAS

**HAROLD JOSEPH NORWOOD, JR., Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**Appealed from the 405th Judicial District**
**Court of Galveston County, Texas**
**Cause No. 13CR1311**

**BRIEF FOR THE STATE OF TEXAS**

**TO THE HONORABLE COURT OF APPEALS:**

Now comes Jack Roady, Criminal District Attorney for Galveston County, Texas,

and files this brief for the State of Texas.

The one-volume Clerk's Record is referred to in the State's Brief as "C.R. page". The Reporter's Record is multiple volumes and is referred to as "R.R. volume number: page".

## SUMMARY OF THE ARGUMENT

Harold Norwood raises two issues in an attempt to reverse his murder conviction. First, he claims he was egregiously harmed because the Trial Court didn't sua sponte include an accomplice witness instruction in its charge. Norwood hasn't shown there was an accomplice witness. Norwood has presented no evidence there was a conspiracy. And even if there should've been an instruction, Norwood has made no attempt to show he was egregiously harmed.

In his second issue, Norwood claims the evidence was "factually" insufficient because driving the victim's car doesn't prove he committed the murder. Norwood's argument ignores the overwhelming circumstantial evidence. The evidence proves he was near the scene of the murder, minutes before the murder. He had the victim's car key, car, and cellphone immediately after the assault. He made admissions that a crime had occurred. Viewing the evidence in the light most favorable to the verdict, Norwood killed the victim and took his car.

## STATEMENT OF FACTS

Juan Navarro owned the Navarro Bakery located on Broadway and 38th Street in Galveston.[1] Navarro also owned a silver Lexus SUV.[2] His bakers came in at 5 a.m. and the bakery closed at 10 p.m.[3] He usually stopped at the bakery after 11 p.m. to turn the alarm on.[4]

After the bakery closed one night in January 2013, Navarro took a co-worker and his family to dinner.[5] They parted ways around 12 a.m.[6] Navarro drove to the bakery.

At 12:23 a.m., Navarro turned into the parking lot.[7] He left his blinker on, but never went into the bakery.[8] He may've fallen asleep in the car.

At 1:04 a.m., an officer responding to an unrelated dispatch,[9] noticed what appeared to be a Lexus SUV in the bakery's parking lot with its turn signal continuously blinking.[10] The doors were closed and the headlights were on.[11] The officer's in-car video was not on.[12] But, as the officer was returning to the police station to complete the dispatch, her in-car video was recording.[13] At 1:28 a.m., the in-car video shows the

---

[1] R.R. III: 46.
[2] R.R. III: 54.
[3] R.R. III: 47.
[4] R.R. VI: 219.
[5] R.R. III: 30.
[6] R.R. III: 32.
[7] R.R. VI: 67; State's Exhibit 1 (bakery videos).
[8] R.R. VI: 67; State's Exhibit 1; State's Exhibit 25 (Chevron video showing continuous blinking).
[9] R.R. VI: 89.
[10] R.R. III: 112-13.
[11] R.R. III: 113.
[12] R.R. III: 114-15.
[13] R.R. III: 115-16; State's Exhibit 24 (in-car video).

blinking light at the bakery.[14]

At 1:37 a.m., a surveillance video at the Mercadito restaurant across Broadway from the bakery showed a single man dressed in all dark walk away from the bakery.[15]

At 1:41 a.m., the video shows the man return.[16] The man was alone.[17] He walked passed the restaurant and towards the bakery.[18] Two of Norwood's friends identified him as the man on the video.[19] They explained they identified him based on his unique walk.[20]

At 1:49 a.m., the videos from the Chevron station across Broadway from the bakery and the bakery's indoor surveillance video show the blinking stopped.[21] The Lexus' headlights were turned on and it pulled onto 38th Street, away from Broadway.[22]

At 1:59 a.m., Officer Ticas noticed a man lying in the bakery parking lot.[23] He stopped and found Navarro gravely injured.[24] He called EMS.[25]

Meanwhile, between 12 a.m. and 2 a.m., Richard Lacy testified he was at his

---

[14] R.R. VI: 32-33, 89; State's Exhibit 24; State's Exhibit 353 (screen shot of in-car video showing Lexus and blinking light at bakery).

[15] R.R. III: 33-34; VI: 137-38; State's Exhibit 59 (Mercadito video). The lead detective testified she checked each video against the dispatch time. R.R. VI: 77-78. Evidently each video was a few minutes off. *Id.* So she adjusted the times to be consistent with dispatch. *Id.*

[16] R.R. VI: 137-38; State's Exhibit 59.

[17] State's Exhibit 59.

[18] R.R. VI: 137-38; State's Exhibit 59.

[19] R.R. V: 57-58, 71-72.

[20] R.R. V: 58-59; 72.

[21] R.R. VI: 24-25; State's Exhibit 1 (bakery videos); State's Exhibit 25 (Chevron video).

[22] R.R. VI: 67-68; State's Exhibit 25.

[23] R.R. III: 94-95.

[24] R.R. III: 94.

[25] R.R. III: 94.

neighbor's house on 38th Street drinking and using drugs with several people, including James Nolan.[26] The house was about a block behind the bakery.[27] Close to 2:00 a.m., he saw a silver SUV on 38th coming from Broadway.[28] Lacy thought it was his friend Joseph.[29] It wasn't Joseph, it was Norwood.[30] Lacy, who'd known Norwood for a few days, had never seen Norwood drive the Lexus before.[31] Norwood asked Lacy where there was a Coinstar.[32] Lacy told Norwood the only one available at that time was at Kroger on 50th and the Seawall.[33]

James Nolan testified that on the night of the murder, he was with Lacy at a house.[34] Nolan heard the conversation about the coins between Norwood and Lacy.[35] Nolan said Lacy left with Norwood.[36]

At 1:58 a.m., the silver Lexus parked at Kroger.[37] Norwood, wearing all dark clothes, got out of the driver's seat.[38] Lacy testified Norwood had the car key.[39] Lacy, wearing a yellow jacket and khaki pants, got out of the passenger seat.[40] The men

---

[26] R.R. IV: 107-08.
[27] R.R. VI: 68-69.
[28] R.R. IV: 110.
[29] R.R. IV: 109-10.
[30] R.R. IV: 110.
[31] R.R. IV: 112.
[32] R.R. IV: 113.
[33] R.R. IV: 113.
[34] R.R. IV: 65-66.
[35] R.R. VI: 65, 67.
[36] R.R. IV: 67.
[37] R.R. IV: 52-53; VI: 42-43; State's Exhibit 62 (Kroger parking lot video).
[38] R.R. IV: 53-54, 120; State's Exhibit 62.
[39] R.R. IV: 121.
[40] R.R. IV: 53-54, 120; State's Exhibit 62.

entered Kroger and went to the Coinstar.[41] Lacy testified Norwood had a cloth bag full of coins.[42] Lacy testified the men cashed the coins and Norwood made him keep the cloth bag until after they left Kroger.[43] The Coinstar receipt for $117.15 was issued at 2:01 a.m.[44]

At 2:11 a.m., Lacy and Norwood left Kroger.[45] Norwood had the car key.[46] Lacy testified he drove as they left because Norwood's driving was erratic.[47] As they drove, Norwood told Lacy he was taking a penitentiary chance in the vehicle.[48] Lacy thought he meant something was going on with the car or that it was stolen.[49] Lacy testified Norwood might've said he hit a lick (which could mean taking something from someone or taking something without permission).[50] Lacy testified Norwood told him he shouldn't say anything about the car.[51] They got more drugs.[52]

At the hospital, a trauma surgeon tried to save Navarro.[53] Unfortunately, his injuries were not survivable and he died at 8:13 p.m.[54]

At 2:30 a.m., the on-call detective (Detective Sollenberger) was called to the

---

[41] R.R. IV: 114-15.
[42] R.R. IV: 117-18.
[43] R.R. IV: 114-15, 134; State's Exhibit 63 (video of inside Kroger).
[44] R.R. IV: 48-50; State's Exhibit 64 (Coinstar receipt).
[45] R.R. VI: 69.
[46] R.R. IV: 121.
[47] R.R. IV: 114.
[48] R.R. IV: 122.
[49] R.R. IV: 122.
[50] R.R. IV: 139-40.
[51] R.R. IV: 137.
[52] R.R. IV: 123.
[53] R.R. IV: 8-9.
[54] R.R. IV: 15-16.

scene.[55] When she first got to the bakery, she noticed a dry void in an otherwise wet parking lot.[56] It was the size of a car.[57] The wet spot was consistent with an air conditioning drip spot, as if a vehicle had been sitting and running.[58] The victim's key ring was laying next to him, but there was no car key on the ring.[59]

Detective Sollenberger testified she was able to pull up a photograph of the bakery owner.[60] The first officer on the scene identified him as the injured man.[61] The bakery was locked and nothing looked disturbed inside it.[62]

An officer went to the victim's home to learn why Navarro may've been at the bakery that late and to ask if there was a missing car.[63] The victim's wife told the police about the missing Lexus.[64] The detective sent out a regional broadcast about the missing Lexus.[65] Multiple officers looked for the Lexus.[66] Detective Sollenberger also posted a Facebook post to the police account asking for information on the stolen car.[67]

The next day, the police got a tip that the car was parked on 38th Street.[68] The car

---

[55] R.R. VI: 9.
[56] R.R. VI: 11-12.
[57] R.R. VI: 12.
[58] R.R. VI: 14.
[59] R.R. VI: 20.
[60] R.R. VI: 15.
[61] R.R. VI: 15.
[62] R.R. VI: 14, 16.
[63] R.R. VI: 15.
[64] R.R. VI: 16.
[65] R.R. VI: 16-17.
[66] R.R. III: 168-69, 183.
[67] R.R. VI: 17.
[68] R.R. VI: 25-26.

was warm and the air conditioning condenser was dripping.[69] This indicated to the officers that the car was recently driven.[70] An officer looked under the car and noticed what appeared to be blood in the driver's side wheel well.[71] The officers decided to tow the car to the police department for processing.[72]

While the police were still at the scene where the Lexus was found, a woman came up to them and said she feared Norwood was dead in the car.[73] The police also got a call from Norwood's brother.[74] He too feared Norwood was dead in the car.[75] Norwood wasn't. Several agencies began looking for Norwood.[76] On February 16, 2013, a Houston police officer arrested Norwood.[77]

At the Galveston Police Department, the officers dusted the car for fingerprints.[78] They found swipe marks on the driver's door.[79] This indicated to the officers that someone tried to wipe the door clean.[80] Fortunately, the officers were still able to get a fingerprint.[81] The fingerprint matched Norwood.[82]

---

[69] R.R. III: 186; VI: 26.
[70] R.R. III: 186-87; VI: 26.
[71] R.R. III: 188, 191-92.
[72] R.R. III: 193.
[73] R.R. III: 194-98.
[74] R.R. VI: 29.
[75] R.R. VI: 29-30.
[76] R.R. VI: 53-54.
[77] R.R. V: 141-43.
[78] R.R. IV: 88; V: 178.
[79] R.R. V: 200-01.
[80] R.R. V: 200-01.
[81] R.R. V: 179.
[82] R.R. V: 147, 149, 151.

The police officers immediately tried to locate the victim's cellphone.[83] They called it and had the service provider ping it.[84] The pings didn't provide an exact location.[85] However, the officers were able to get the phone's call logs.[86] There were several calls made after the victim was found.[87] The officers determined each person called knew Norwood.[88] The officers also determined that a call was made to check someone's bank account balance.[89] The bank recorded the telephone call.[90] Dietrich Simmons made the call to the bank.[91] She testified she got the cellphone from Norwood.[92]

The day after the murder, Richard Lacy spoke to his brother about Norwood.[93] Lacy knew he'd been in the car.[94] His brother urged Lacy to do the right thing.[95] Lacy called 911 to say he had information.[96] Lacy voluntarily went to the police station twice and gave two statements.[97] He told the police what he knew about Norwood.[98] Lacy said

---

[83] R.R. VI: 17-18.
[84] R.R. VI: 17-18.
[85] R.R. VI: 18.
[86] R.R. V: 132.
[87] R.R. V: 133-36.
[88] R.R. V: 137-38; VI: 44-48.
[89] R.R. VI: 45.
[90] R.R. VI: 45.
[91] R.R. VI: 45.
[92] R.R. V: 59-60.
[93] R.R. IV: 137.
[94] R.R. IV: 137.
[95] R.R. IV: 137.
[96] R.R. IV: 127-28.
[97] R.R. VI: 34, 36-37.
[98] R.R. IV: 128-29.

he'd seen Norwood continue to drive the Lexus after their Kroger trip.[99] He said Norwood used a cloth to wipe the car down every time he got out of it.[100]

Lacy testified he thought he also told the police that the night before the murder, he and Norwood walked by the bakery and on the way to the corner store.[101] Norwood said to Lacy "That's a nice car."[102]

On cross-examination, Lacy agreed Norwood didn't say he stole a car, hurt someone, or killed someone.[103] Lacy agreed he didn't see Norwood steal the Lexus or hurt anyone.[104] Lacy said he didn't assume the car was stolen until after Norwood said he was taking a penitentiary chance by driving it and Norwood wiped the car down.[105]

During Norwood's case-in-chief, he recalled Lacy.[106] He questioned Lacy about his criminal history.[107] Lacy said he saw Norwood drive the Lexus for 4 or 5 days.[108] When Norwood asked if Lacy would be surprised the car was recovered within 2 days of the murder, Lacy said he could be wrong about the days.[109]

Lacy voluntarily gave the police a DNA sample and the clothes he was wearing.[110]

---

[99] R.R. IV: 125.
[100] R.R. IV: 126.
[101] R.R. IV: 136.
[102] R.R. IV: 136.
[103] R.R. IV: 144.
[104] R.R. IV: 145-46.
[105] R.R. IV: 147.
[106] R.R. VII: 53.
[107] R.R. VII: 54.
[108] R.R. VII: 60-67.
[109] R.R. VII: 68.
[110] R.R. IV: 129.

He also gave the police the shoes he leant to Norwood.[111] None of the victim's DNA was on Lacy's clothes or Norwood's shoes.[112] One of Lacy's shoes tested positive for presumptive blood.[113] The DNA test showed it was a mixture.[114] Lacy was the major contributor.[115] The data regarding the minor contributor was too small to make an identification.[116]

Lacy told the jury he had a prior felony conviction for forgery and for possession of a controlled substance.[117] He admitted he has a drug problem.[118] He told the jury he was under arrest for a misdemeanor offense of obstructing a passageway, but didn't have a deal with the State for his testimony.[119]

Detective Sollenberger testified that initially Lacy was a suspect because he was on the Kroger video 10 minutes after the vehicle was stolen.[120] She testified, however, that Lacy was ruled out as a suspect early in the investigation.[121] The detective explained that the police were able to speak to Lacy's roommates, including James Nolan, and corroborated what Lacy told them.[122] The Kroger and Mercadito surveillance videos also

---

[111] R.R. IV: 129-30.
[112] R.R. VI: 194, 199; State's Exhibit 360 (DNA laboratory report).
[113] State's Exhibit 359 (forensic toxicology laboratory report); State's Exhibit 360.
[114] State's Exhibit 360.
[115] State's Exhibit 360.
[116] State's Exhibit 360.
[117] R.R. IV: 105.
[118] R.R. IV: 108.
[119] R.R. IV: 106.
[120] R.R. VI: 138.
[121] R.R. VI: 138.
[122] R.R. VI: 138, 143.

corroborated Lacy.[123] Lacy was not with Norwood when he assaulted the victim and took his car.

The Medical Examiner testified Navarro had abrasions on his head, face, forehead, check, ear, both knees, and his elbow.[124] He had 2 broken ribs.[125] Navarro had a hemorrhage under both sides of his scalp and a hemorrhage over the left side of his brain.[126] He had a basal skull fracture stretching from one ear to the other.[127] There was blood coming out of his ears, which is a characteristic of the skull injury.[128] The Medical Examiner testified a basal skull fracture is most commonly seen in car accidents where the person's head is moving very quickly and suddenly stops or when people fall from a height and there's a hyperflexion.[129] He said a basal skull fracture is always fatal.[130] The doctor said Navarro could've been struck while his head was still or could've been pushed over and his head struck a fixed object.[131] The Medical Examiner testified the manner of death was homicide and the cause of death was blunt force head trauma.[132]

The Medical Examiner testified he reviewed the crime scene pictures of the scene.[133] Based on the scene, the doctor explained the victim's facial abrasions and the

---

[123] R.R. VI: 138, 144.
[124] R.R. V: 17.
[125] R.R. V: 38-39.
[126] R.R. V: 17-18.
[127] R.R. V: 18.
[128] R.R. V: 22.
[129] R.R. V: 27.
[130] R.R. V: 27.
[131] R.R. V: 33.
[132] R.R. V: 33.
[133] R.R. V: 34-35.

pattern on his chest could've been caused from a fight, from getting rolled over by a vehicle and being caught under the undercarriage, or getting his head slammed to the ground.[134] The doctor explained that the vehicle could've caused the basal skull fracture if the victim was lying flat on the ground, with his head up and as the tire came across his chest, slamming his head back.[135] The doctor agreed that the victim could've been trying to get up when the car rolled over his chest.[136] The doctor also agreed that Navarro could've been standing up or in his vehicle and received a blow to the head that caused the brain hemorrhages.[137] The doctor testified, based on the crime scene photos, the rib fractures could've been caused by the vehicle rolling over the victim's chest.[138] The Medical Examiner testified a vehicle, used to run over someone in this way, is a deadly weapon.[139]

Norwood did not request any instructions in the jury charge and affirmatively stated he had no objections to the charge.[140] There was no accomplice witness language in the charge.[141]

The jury convicted Norwood of murder and made an affirmative finding of a deadly weapon.[142]

---

[134] R.R. V: 35.
[135] R.R. V: 35-36.
[136] R.R. V: 36-37.
[137] R.R. V: 37-38.
[138] R.R. V: 38-39.
[139] R.R. V: 39.
[140] R.R. VII: 81-82.
[141] C.R. 159.
[142] C.R. 164, 166.

The jury heard Norwood had 17 convictions---7 for drug convictions, a failure to identify conviction, 3 evading arrest convictions, 3 theft convictions, and 3 assault convictions.[143] The jury found both enhancements for possession of a controlled substance true and sentenced Norwood to 80 years confinement.[144]

This appeal followed.

---

[143] R.R. VIII: 37-44.
[144] C.R. 174.

## FIRST ISSUE

**There must be evidence a witness is an accomplice before a court is required to include an accomplice witness instruction in its charge. If the court should've included the instruction, but the defendant didn't object, the defendant must show he was egregiously harmed.**

**How's there harmful reversible error when there's no evidence Lacy was an accomplice, Norwood didn't object to the charge, and Norwood made no argument he was egregiously harmed?**

## ARGUMENT AND AUTHORITIES

Norwood doesn't cite to any evidence from any source that Lacy was a co-conspirator accomplice witness. Consequently, the Trial Court did not err by omitting a sua sponte jury instruction that he was. Even if there was error, Norwood wasn't egregiously harmed by the omission because the non-accomplice evidence corroborates Lacy's testimony by tending to connect Norwood to the crime.

### V.  Accomplice Witness Applicable Law

An accomplice is a person who participates before, during, or after the commission of the offense with the requisite culpable mental state.[145] A person can be an accomplice as a direct party or as a co-conspirator.[146]

---

[145] *Smith v. State,* 332 S.W.3d 425, 439 (Tex. Crim. App. 2011).

[146] *Zamora v. State*, 411 S.W.3d 504, 511 (Tex. Crim. App. 2013) (citing TEX. PENAL CODE §7.01 (person is "criminally responsible" for his own conduct or for "conduct of another for which he is criminally responsible"); TEX. PENAL CODE §7.02(a) (describing criminal responsibility as a direct party); TEX. PENAL CODE §7.02(b) (describing criminal responsibility for a party as a co-

15

If a witness is an accomplice, Code of Criminal Procedure article 38.14 requires a jury instruction that a conviction cannot rest on the testimony of the accomplice witness "unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."[147] The accomplice witness rule reflects "the legislative determination that accomplice testimony must be taken with a certain degree of caution."[148] "Accomplices often have an incentive to lie, such as to avoid punishment or shift blame to another person."[149]

The evidence in the particular case dictates whether an accomplice-witness instruction is required.[150] A witness may be considered an accomplice as a matter of law or as a matter of fact.[151] A prosecution witness who is indicted for the same offense as the defendant or a lesser-included offense is an accomplice as a matter of law.[152] "If a prosecution witness is an accomplice as a matter of law, the trial court is under a duty to instruct the jury accordingly."[153] "Failure to do so is error."[154] When, however, there is doubt as to whether a witness is an accomplice—i.e., the evidence is conflicting—then the court may instruct the jury to determine the witness's

conspirator)).

[147] *Zamora*, 411 S.W.3d at 509-10; TEX. CODE CRIM. PROC. ANN. art. 38.14.

[148] *Gaston v. State,* 324 S.W.3d 905, 908 (Tex. App.---Houston [14th Dist.] 2010, pet. ref'd); *see Bingham v. State,* 913 S.W.2d 208, 211 (Tex. Crim. App. 1995).

[149] *Smith,* 332 S.W.3d at 439.

[150] *Id.*

[151] *Id.*

[152] *Id.*; *Herron v. State,* 86 S.W.3d 621, 631 (Tex. Crim. App. 2002).

[153] *Herron,* 86 S.W.3d at 631.

[154] *Id.*

accomplice status as a fact issue.[155]

When the evidence clearly shows that the witness is not an accomplice, then the court is not required to instruct the jury on the accomplice-witness rule at all.[156]

If the trial court improperly omitted an accomplice witness instruction, the appropriate harm standard depends on whether the defendant preserved his complaint by bringing the omission to the trial court's attention.[157] If the error was properly preserved, the appeals court must reverse if "some harm" is shown.[158] But if the defendant failed to preserve the complaint, the error "must be 'fundamental'" "and requires reversal only if it was so egregious and created such harm that the defendant has not had a fair and impartial trial."[159]

## VI. **Lacy Was Not An Accomplice**

Norwood claims the Trial Court erred by not sua sponte including an accomplice witness instruction in its jury charge because Lacy was Norwood's co-conspirator. Norwood is wrong.

According to the Penal Code, a person is a co-conspirator and is criminally responsible for another,

> If, in the attempt to carry out a conspiracy to commit one
> felony, another felony is committed by one of the

---

[155] *Smith,* 332 S.W.3d at 439-40.
[156] *Id.* at 440.
[157] *See Herron,* 86 S.W.3d at 632.
[158] *Id.*
[159] *Barrios v. State,* 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)).

> conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.[160]

Notably, Norwood doesn't identify the supposed conspiracy Lacy and Norwood entered into. Norwood doesn't cite to any evidence and there is no evidence from any source that there was a conspiracy.

Norwood speculates that Lacy might've been a co-conspirator in some kind of conspiracy because the night before the murder he went for a walk with Norwood. As they walked by the bakery on their way to a store, Norwood said he liked the Lexus parked at the bakery. There's no evidence Lacy and Norwood formulated a plan or had a common understanding to take the car. There's no evidence Lacy knew Norwood was going to steal the car the following night and kill the owner. There's no evidence Lacy anticipated or reasonably should've anticipated Norwood was going to steal the car and run over the victim.

Norwood argues Lacy was a conspirator because there was blood on his shoe when he talked to the police in the days after the murder. There's no evidence tying the blood to the victim. There's no evidence explaining when the blood got onto the shoe. This is no evidence of a conspiracy.

Norwood further claims Lacy was a co-conspirator because he was in the

---

[160] Tex. Penal Code §7.02(b).

18

Lexus after the murder and drove the Lexus when they left Kroger. This argument is based solely on Lacy's presence in the car after the murder. Mere presence doesn't make a person an accomplice[161] or a conspirator.[162]

To be clear, there's no testimony or evidence that Lacy was with Norwood when Norwood committed the murder. To the contrary, the evidence establishes Norwood was alone. The Mercadito video shows Norwood was alone when he walked away from the bakery and then 4 minutes later returned and walked towards the bakery.

The video is not the only evidence that proves Lacy was not at the bakery. Nolan testified Lacy was with him at a house before Norwood showed up to ask if there was a nearby coin machine. There's no evidence Lacy intended Norwood to commit any crime when Lacy was using drugs and drinking with Nolan at a house blocks away from the bakery.

Because there's absolutely no testimony and no evidence that would make Lacy an accomplice as a matter of law and because there's also no conflicting evidence suggesting Lacy was an accomplice as a matter of fact, the Trial Court wasn't obligated to instruct the jury on the accomplice witness rule as it could apply to Lacy.[163]

---

[161] *See Smith*, 332 S.W.3d at 439.
[162] *See Wygel v. State*, 555 S.W.2d 465, 469 n.3 (Tex. Crim. App. 1977).
[163] *See Smith*, 332 S.W.3d at 439-40.

## VII. Norwood Wasn't Egregiously Harmed: The Non-Accomplice Evidence Corroborates Lacy & Tends To Connect Norwood To The Murder

Because Norwood didn't object to the jury charge and affirmatively stated he had no objections to the charge,[164] this Court reviews the alleged error to determine whether the omission caused Norwood egregious harm.[165]

Norwood made no effort to explain how he was egregiously harmed by the absence of an accomplice witness instruction in his brief. Norwood's failure to brief doesn't impact the outcome of this case because he wasn't harmed and certainly wasn't egregiously harmed.

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.[166] The error must have been so harmful as to effectively deny the defendant a fair and impartial trial.[167] The egregious harm standard "is a difficult standard to meet."[168]

The omission of the accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is "so unconvincing in fact as to render

---

[164] R.R. VII: 81-82.

[165] *See Mann v. State,* 964 S.W.2d 639, 641 (Tex. Crim. App. 1998).

[166] *Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008).

[167] *See Warner v. State,* 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

[168] *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013).

the State's overall case for conviction clearly and significantly less persuasive."[169] In other words, if the non-accomplice evidence corroborates the accomplice testimony by tending to connect the defendant to the crime, the failure to give the instruction is generally harmless.[170]

Evidence corroborating an accomplice need not directly link the accused to the offense or be sufficient in itself to establish guilt; instead, the corroborating evidence need only tend to connect the accused to the crime committed.[171] "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration."[172] Furthermore, there need only be some non-accomplice evidence tending to connect the defendant to the crime, not to every element of the crime.[173]

The evidence tends to connect Norwood to the murder.

While a defendant's mere presence at the crime scene is insufficient to corroborate accomplice testimony, "'[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'"[174] The Mercadito, the

---

[169] *Herron,* 86 S.W.3d at 632.
[170] *Id.*
[171] *Moron v. State,* 779 S.W.2d 399, 401 (Tex. Crim. App. 1985).
[172] *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).
[173] *Joubert v. State,* 235 S.W.3d 729, 731 (Tex. Crim. App. 2007).
[174] *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Brown v. State*, 672 S.W.2d

Chevron, and the bakery videos establish the Lexus was at the bakery when 1 man walked by the Mercadito restaurant. The Mercadito video shows the man was alone and was wearing dark clothes. The Mercadito video then shows the man in dark was still alone when he walked towards the bakery 4 minutes later. Two people identified Norwood as the man walking on the Mercaidtio video.

The Mercadito, the Chevron, and the bakery videos show the SUV's blinking light turned off 8 minutes after Norwood walked towards the bakery. The Chevron video shows the SUV turned onto 38th Street when it left the bakery. Nolan testified he heard Norwood discuss coins with Lacy and then the men left the house on 38th Street.

It's certainly a suspicious circumstance that 10 minutes after the victim's Lexus left the bakery, the Kroger video shows Norwood park it. Norwood was still wearing dark colored clothes. He cashed coins and left the Kroger in the victim's SUV.

Norwood's fingerprint on the SUV corroborates the videos and the witnesses. The wipe marks on the SUV shows Norwood's effort to destroy evidence.

To add to the suspicious circumstances, Norwood also had the victim's cellphone after the murder. He gave it to Simmons, who called the bank to check an account's balance. All the other calls made with the phone after the assault were to people Norwood knew.

---

487, 489 (Tex. Crim. App. 1984)).

The timeline, the physical evidence, and the witnesses' testimonies tend to connect Norwood to the murder.[175] Lacy's testimony was corroborated.[176]

Additionally, the jury was well aware Lacy may not be truthful. Norwood attacked Lacy's credibility when he crossed him, when he recalled him in his case-in-chief, and during his closing argument.

During the testimony, Norwood highlighted Lacy's criminal history. He attempted to show Lacy was only testifying because he was hoping for a deal on his recent obstruction of a passageway arrest. And he illustrated Lacy was wrong when he testified that Norwood drove the car for 4 or 5 days.

In closing statements, Norwood reminded the jury that Lacy is a repeat convicted felon.[177] He argued Lacy couldn't keep his story straight.[178] He argued Lacy had every reason to lie because he was in the car after the murder, helped Norwood cash the coins, drove the car away from Kroger, had blood on his shoe two days later, and the car was found in front of his house.[179] Norwood told the jury it was more

---

[175] *See Herron,* 86 S.W.3d at 632 ("[N]on-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve.").

[176] *See id.* ("Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'").

[177] R.R. VII: 112-13.

[178] R.R. VII: 113.

[179] R.R. VII: 113-14.

likely Lacy committed the crime.[180] The jury was aware that it could take Lacy's testimony with caution.

## VIII.  **Conclusion: No Ground For Reversal**

There was significant non-accomplice evidence that tended to connect Norwood to the murder. The non-accomplice evidence was not so unconvincing as to render the State's overall case for conviction clearly and significantly less persuasive. The purpose of the accomplice witness instruction was fulfilled and any error was harmless.[181]

Norwood' first issue should be overruled.

---

[180] R.R. VII: 114.

[181] *See Herron*, 86 S.W.3d at 632.

**SECOND ISSUE**

**Video proves Norwood walked towards the crime scene minutes before the victim's car was stolen. Video proves Norwood was driving the car minutes after the victim was left dying in his bakery parking lot. Norwood had the victim's car, his car key, and his cellphone.**

**Viewing the evidence in the light most favorable to the verdict, how's there insufficient evidence to prove Norwood murdered the victim?**

# ARGUMENT AND AUTHORITIES

## III.  Relevant Sufficiency Law

Norwood only challenges the factual sufficiency of the evidence. He doesn't challenge the legal sufficiency of the evidence. He argues that proving he drove the victim's Lexus after the murder isn't sufficient to establish he committed the murder.

The Court of Criminal Appeals has determined and repeatedly affirmed[182] that the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable

---

[182] *See Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) ("As the court of appeals properly noted, this Court now applies only one standard 'to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency.'"); *Ex parte Flores,* 387 S.W.3d 626, 641 (Tex. Crim. App. 2012) (noting that court "did away with" factual sufficiency review in *Brooks* ); *Adames v. State,* 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard for courts to apply in determining sufficiency of evidence).

doubt.[183] Therefore, in analyzing Norwood's challenge to the sufficiency of the evidence, this Court applies only the *Jackson v. Virginia* standard.

When reviewing the sufficiency of the evidence, the appellate court views all of the evidence in the light most favorable to the verdict and determines, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt.[184] The reviewing court also considers both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence.[185] Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.[186] The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense.[187]

The reviewing court does not reevaluate the weight and credibility of the evidence or substitute its judgment for that of the factfinder.[188] Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict.[189]

---

[183] *See Griego v. State,* 337 S.W.3d 902, 903 (Tex. Crim. App. 2011).
[184] *See Gear v. State,* 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979)).
[185] *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).
[186] *See Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).
[187] *See Garcia v. State,* 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).
[188] *See Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).
[189] *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

To obtain a conviction for murder, the State must prove the defendant intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death of an individual.[190]

## IV.   The Evidence Proves Norwood Killed The Victim

Norwood claims the evidence is factually insufficient to prove murder because it only shows he drove the victim's car. Norwood is misstates the evidence.

The timeline of events is detailed above. In short, nobody else could've committed the crime within the established timeframe. To summarize, Norwood was near the scene 7 minutes before the Lexus left the parking lot. He was alone. Two of his friends identified him as the man in dark clothes walking towards the bakery. Norwood stopped on 38th Street, blocks from the bakery, and asked Lacy about a coin machine. Nolan overheard the conversation. Lacy left with Norwood. Norwood drove to and parked the victim's Lexus at the Kroger 10 minutes after leaving the bakery. Detective Sollenberger testified she repeatedly timed the drive from 38th to the Kroger.[191] On average the drive takes 7 ½ to 8 ½ minutes.[192] There was no time for anyone else to have committed the murder, stolen the car, have a conversation about a coin machine, and then drive Lacy to the Kroger.[193]

When Norwood and Lacy left Kroger, Norwood told Lacy he was taking a

---

[190] TEX. PENAL CODE § 19.02(b)(2).
[191] R.R. VI: 70, 33-34.
[192] R.R. VI: 70.
[193] *See Palomo v. State*, 352 S.W.3d 87, 90-91 (Tex. App.---Houston [14th Dist.] 2011, pet. ref'd) (circumstantial evidence of guilt include proximity to the murder scene near the time of the murder).

penitentiary chance by driving the car. He said Lacy shouldn't tell anyone about the car. And he told Lacy he hit a lick. The jury could reasonably conclude that Norwood's admissions, coupled with the other evidence, was proof his consciousness of guilt.

The jury also knew Norwood had both the victim's car key and his cellphone after the assault. When the police got to the bakery, they found the victim's keyring next to him. The Lexus key was missing. Lacy testified Norwood had the key when he was driving the Lexus minutes after the victim was hurt. Simmons testified Norwood gave her the victim's cellphone. The jury could reasonably conclude car keys and a cellphone would've been on the victim or in his immediate reach. The car key was never found. Based on his injuries and the timing, the jury could reasonably infer that only the murderer would have those items.[194]

Lacy testified Norwood had a cloth bag with coins. Norwood made Lacy pull the bag out of the Kroger trash can. Lacy testified Norwood threw the bag out as they drove away. The victim's wife testified her husband kept coins in a cloth bag. The jury could reasonably infer Norwood's action of disposing of the cloth bag was an inference of guilt.[195]

Throwing the coin bag away and hiding the car key were not Norwood's only attempt to conceal evidence. Lacy testified Norwood wiped the car down every time he

---

[194] *See Flores v. State*, 551 S.W.2d 364, 369 (Tex. Crim. App. 1977) (holding a defendant's unexplained possession of a victim's stolen property may be sufficient to sustain a conviction).
[195] *See Miller v. State*, 177 S.W.3d 177, 184 (Tex. App.---Houston [1st Dist.] 2005, pet. ref'd) (attempting to hid evidence is circumstantial evidence of guilt).

got out of the car. When the police processed the car for fingerprints, they found wipe marks. They also found Norwood's fingerprint. This is more proof of Norwood's guilt.[196]

Viewing the evidence in the light most favorable to the jury's verdict, the evidence establishes Norwood murdered the victim and took his SUV.

Norwood's second issue should be overruled.

---

[196] *See id.*

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the State prays that the judgment of the Trial Court be affirmed in all respects.

Respectfully submitted,

JACK ROADY
CRIMINAL DISTRICT ATTORNEY
GALVESTON COUNTY, TEXAS


/s/ *Rebecca Klaren*
REBECCA KLAREN
Assistant Criminal District Attorney
State Bar Number 24046225
600 59th Street, Suite 1001
Galveston, Texas 77551
Tel (409)770-6004/Fax (409)621-7952
rebecca.klaren@co.galveston.tx.us

## CERTIFICATE OF SERVICE

The undersigned Attorney for the State certifies a copy of the foregoing brief was sent via email, eFile service, or certified mail, return receipt requested, to Zachary S. Maloney, attorney for Harold Joseph Norwood, Jr., at zachmaloeny@gmail.com or 2925 Gulf Freeway South Suite B #295, League City, Tx 77573, on August 3, 2015.

*/s/ Rebecca Klaren*
REBECCA KLAREN
Assistant Criminal District Attorney
Galveston County, Texas

## CERTIFICATE OF COMPLIANCE

The undersigned Attorney for the State certifies this brief is computer generated, and consists of 6,284 words.

*/s/ Rebecca Klaren*
REBECCA KLAREN
Assistant Criminal District Attorney
Galveston County, Texas