

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MARK HERNANDEZ, | § | No. 08-13-00277-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 41st District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120D03363) |
| | § | |

## **O P I N I O N**

Appellant Mark Hernandez pleaded guilty to murder and elected to have a jury assess punishment. The jury assessed punishment at life imprisonment. On appeal, Appellant contends the trial court erred in denying his challenges for cause during voir dire. Appellant also complains about the trial court's admission of evidence of an uncharged extraneous offense and refusal to restrict the scope of his cross-examination. We conclude that Appellant failed to establish harm from the denial of his challenges for cause, and that the trial court did not abuse its discretion in denying Appellant's objections to the extraneous-offense evidence or to the scope of his cross-examination. Accordingly, we affirm.

## **BACKGROUND**

Appellant's own brief reveals the random, senseless nature of the murder involved in this

case: "On June 2, 2012, Daniel Nunez was shot in the head by appellant in front of numerous witnesses for no apparent reason. Evidence showed that the appellant and victim did not know each other, had no confrontation prior to the shooting, and were actually sitting next to each other participating in the conversation at a table full of guests immediately prior to the shooting." The event was a baby shower. It was there that Appellant met Daniel Nunez for the first time. Around 10 p.m. as the shower was coming to a close, Appellant, who was sitting next to Daniel, drew a gun from his waistband and – as Appellant himself admits – shot Daniel in the head without provocation.

## DISCUSSION

### Challenges for Cause

In his first issue, Appellant contends the trial court abused its discretion when it denied his motions to strike four venire members for cause. We conclude Appellant has failed to show harm, in part because he did not identify the objectionable jurors left on the jury.

### *Background*

Appellant complains that the trial court erroneously denied his challenges for cause to venire members 4 (Leal), 6 (Eddy), 52 (Vasquez), and 76 (Teal). As to venire members 4, 6, and 52, Appellant moved to strike each for cause. When his motions were denied, Appellant moved for additional peremptory strikes, which the trial court also denied. As to venire member 76, however, Appellant made only a challenge for cause. Appellant failed to request an additional peremptory strike after his motion was denied.

Appellant thereafter exhausted his ten peremptory strikes, as well as an additional strike against one alternate juror. Appellant used his peremptory strikes against venire members 4

2

(Leal), 6 (Eddy), and 52 (Vasquez). Appellant did not use a peremptory strike against venire member 76 (Teal), who apparently was out of the strike zone and too far down the list of jurors to make it on the jury panel. After jury selection, Appellant did not identify to the trial court any objectionable jurors who remained on the jury and whom he would have removed if his challenges for cause had been granted or if he had been granted additional peremptory strikes.

*Establishing Harm from the Denial of a Challenge for Cause*

A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely. *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex.Crim.App. 2014); *Gardner v. State,* 306 S.W.3d 274, 295 (Tex.Crim.App. 2009). A trial judge must excuse the juror if bias or prejudice would impair the juror's ability to carry out his oath and instructions in accordance with the law. *Comeaux*, 445 S.W.3d at 749; *Feldman v. State,* 71 S.W.3d 738, 744 (Tex.Crim.App. 2002).

To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Comeaux*, 445 S.W.3d at 749; *Davis v. State,* 329 S.W.3d 798, 807 (Tex.Crim.App. 2010).

The purpose of these five steps is to demonstrate that the defendant suffered a detriment from the loss of a peremptory strike, i.e., to show the error actually harmed the defendant. *Comeaux*, 445 S.W.3d at 749. As noted in *Feldman,* the detriment from an erroneous denial of a challenge for cause is that the defendant was forced to take an identified objectionable juror whom

3

he would have struck had the trial court granted his challenge for cause or granted him additional peremptory strikes. 71 S.W.3d at 744; *see Comeaux*, 445 S.W.3d at 750 ("When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror.").

The first step requires the defendant to establish that he made a "clear and specific challenge for cause" against a panel member. *Comeaux*, 445 S.W.3d at 750. The defendant must then use a peremptory challenge on the complained-of member and exhaust all remaining peremptory challenges. *Id*. If the defendant does not exhaust his peremptory strikes, the trial judge's erroneous denial has not harmed the defendant because he was not stripped of the right to dismiss an "obnoxious" juror. *Id.*; *See Pogue v. State,* 553 S.W.2d 368, 370 (Tex.Crim.App. 1977). The defendant must then ask for an additional strike so that the judge is given the opportunity to correct his error by granting an additional peremptory strike to make up for the one that was wrongly denied. *Comeaux*, 445 S.W.3d at 750. Finally, the defendant must identify on the record the objectionable juror whom he would have removed with the additional strike (but is not required to explain why that juror is objectionable). *Comeaux*, 445 S.W.3d at 750. By complying with these steps, the defendant shows that he actually needed the peremptory strike that he was forced to use on a biased juror. *Id.*

*Analysis*

As to venire member 76 (Teal), Appellant failed to show harm for two reasons. First, Appellant did not request an additional peremptory strike after his challenge for cause as to venire member 76 was denied. Second, Appellant did not exercise a peremptory strike on venire

4

member 76. Appellant was required to comply with both these steps in order to show harm from the denial of his challenge for cause to venire member 76.

As to venire members 4 (Leal), 6 (Eddy), and 52 (Vasquez), Appellant never identified to the trial court any objectionable juror remaining on the jury and whom he would have struck had the trial court granted his challenge for cause or granted him additional peremptory strikes. Appellant complains that the trial court never asked if he had any objections to the jury as seated. Indeed, the record shows that once the jury selection was completed, the trial court did not ask if there were any objections to the jury as seated. Appellant argues that his counsel was thus never given the opportunity to identify any objectionable jurors, and implies that under these circumstances, he was not required to identify any objectionable jurors to show harm. We disagree.

Appellant has not directed this Court to any authority requiring the trial court to affirmatively ask counsel if any objectionable jurors remain on the jury, and we have found none. Rather, it is incumbent on the defendant, through counsel, to point out to the trial court the identities of any objectionable jurors that remain on the jury panel. *See, e.g., Comeaux*, 445 S.W.3d at 750 ("*the defendant must identify* on the record the objectionable juror whom he would have removed with the additional strike") [emphasis added]. Further, Appellant never objected to the trial court's failure to inquire whether any objectionable jurors remained on the jury.[1] As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion. TEX. R. APP. P. 33.1(a)(1).

---

[1] Appellant states in his brief that he wanted to object to and strike eight of the twelve jurors seated because of their views on the purpose of punishment. Appellant, however, never voiced any such objections to the trial court.

5

Because Appellant failed to identify to the trial court the objectionable jurors whom he would have struck had the trial court granted his challenge for cause or granted him additional peremptory strikes, Appellant has failed to show he was harmed by the trial court's denial of his challenges for cause. Issue One is overruled.

**Extraneous Offense Evidence**

In his second issue, Appellant contends the trial court abused its discretion when it permitted the State to introduce evidence of an uncharged driving-while-intoxicated offense, without first establishing that Appellant was the driver and that he was intoxicated beyond a reasonable doubt. Appellant also asserts that this evidence was inadmissible under Rule 403 because its probative value was substantially outweighed by its prejudicial impact.

*Standard of Review*

The trial court has broad discretion to determine the admissibility of evidence at the punishment phase of trial. *Cooks v. State,* 844 S.W.2d 697, 735 (Tex.Crim.App. 1992); *Gossett v. State*, No. 08-11-00225-CR, 2013 WL 3943074, at *3 (Tex.App. – El Paso July 31, 2013, no pet.) (not designated for publication). Accordingly, we review a trial court's decision to admit evidence at punishment under an abuse of discretion standard. *Davis*, 329 S.W.3d at 803. The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id.*

*Analysis*

Article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a trial in a non-capital felony offense. Section 3(a)(1) of Article 37.07 states in relevant part:

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing including but not limited to ... evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2014).

This provision means that, for purposes of assessing punishment, the prosecution may offer evidence of any extraneous crime or bad act[2] that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible. *Haley v. State*, 173 S.W.3d 510, 514 (Tex.Crim.App. 2005). The offering party is not necessarily required to prove that the act was a criminal act or that the defendant committed a crime. *Id.* at 515. Rather, the jury need only find that the prior act is attributable to the defendant beyond a reasonable doubt. *Id.* ("[T]he burden of proof [is] to be applied to a defendant's involvement in the act itself, instead of the elements of a crime necessary for a finding of guilt.").

The trial court acts as a gatekeeper and makes the threshold decision on admissibility. The trial court may not admit extraneous-offense evidence unless a jury could rationally find the defendant criminally responsible for the extraneous offense. *Smith v. State,* 227 S.W.3d 753, 759–60 & n.16 (Tex.Crim.App. 2007); *Palomo v. State*, 352 S.W.3d 87, 92 (Tex.App. – Houston [14th Dist.] 2011, pet. ref'd).

In the present case, the State informed the trial court that it intended to present evidence of an uncharged DWI offense. The trial court held a hearing outside the presence of the jury to

---

[2] There is no significant distinction between "bad acts" and "extraneous offenses" under the statute. *Haley*, 173 S.W.3d at 514. Under this statute, it is irrelevant whether the conduct the offering party is attempting to prove is, or can be, characterized as an offense under the Texas Penal Code. *Id* at 514-15.

7

determine the threshold issue of admissibility. After reviewing the record of the threshold inquiry, we conclude the trial court did not abuse its discretion when it implicitly determined that a rational jury could find beyond a reasonable doubt that Appellant was the driver of the vehicle. During the trial court's threshold inquiry, the State presented testimonial evidence that the driver of a red van rear-ended a truck stopped at a red light. The driver of a vehicle that was stopped at the red light in the lane next to the truck called 9-1-1. He identified Appellant as the driver of the red van that struck the truck. The testimony of one eyewitness is sufficient to support a jury's verdict. *Aguilar v. State,* 468 S.W.2d 75, 77 (Tex.Crim.App. 1971); *Walker v. State,* 180 S.W.3d 829, 832 (Tex.App. – Houston [14th Dist.] 2005, no pet.); *Ketchum v. State*, No. 14-05-01083-CR, 2007 WL 1079898, at *3 (Tex.App. – Houston [14th Dist.] Apr. 12, 2007, pet. ref'd) (mem. op., not designated for publication). Further, the eyewitness testimony was corroborated by the El Paso Police officer who responded to the scene and who remembered Appellant by name as the driver of the red van. The trial court determined that this cumulative evidence demonstrated that Appellant was the driver of the red van that hit the truck. We agree.

We also conclude the trial court did not abuse its discretion in determining that the intoxication evidence was sufficient for the extraneous-offense evidence to be considered by the jury. The driver of the truck rear-ended by Appellant was rendered unconscious by the collision. The truck driver's wife, who was a passenger in the truck, testified that following the accident, the person who approached her unconscious husband asked, "Why did you stop?" and was "very irritated" and "moving his arms as if getting ready to fight." She observed that the driver's "face was very irritated and his eyes were very irritated." The driver of the vehicle in the next lane, who had called 9-1-1 and identified Appellant as the driver of the red van, testified that he saw

8

Appellant exit the vehicle and approach the truck, heard him curse, and saw Appellant "throwing the beer cans out of [his] vehicle" and into the median. When the responding police officer spoke with Appellant as he lay on a gurney after the accident, he detected an odor of alcohol and could barely understand what Appellant was attempting to say because his speech was so slurred. A witness informed the officer that Appellant had thrown beer out of his vehicle. A photograph showed a 12-pack of beer found at the scene, which the trial court determined contained open cans.[3]

The trial court concluded that the police officer's testimony that Appellant's speech was slurred and that he smelled of alcohol, along with the occurrence of the accident itself and the witnesses' description of Appellant's demeanor and behaviors – including his being agitated, upset, cussing, and throwing beer cans out of his vehicle – constituted evidence of impairment sufficient to submit to the jury. We agree, and conclude that it was not outside the zone of reasonable disagreement for the trial court to determine that the evidence was sufficient to allow a rational jury to find beyond a reasonable doubt that Appellant was the person who committed the extraneous offense and that he was intoxicated at the time.

Appellant also contends that evidence of his intoxication should have been excluded because under Rule 403 it was unfairly prejudicial.[4] Unless we determine that the trial court's balancing of the factors is outside the zone of reasonable disagreement, we will not overrule the trial court's Rule 403 analysis. *Rodriguez v. State*, 203 S.W.3d 837, 843 (Tex.Crim.App. 2006).

---

[3] Appellant's counsel stated the 12-pack was "intact." The trial court noted, however, that "it's opened." Defense counsel noted that of the five visible cans in the photo, only two were not open.

[4] Pursuant to Rule 403, the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

9

The admissibility of evidence at the punishment phase of a non-capital felony offense trial is really "a function of policy rather than relevance." *Rodriguez,* 203 S.W.3d at 842; *accord Miller–El v. State,* 782 S.W.2d 892, 894–95 (Tex.Crim.App. 1990). Evidence is relevant to sentencing, under Article 37.07, Section 3(a), if the evidence is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *McGee v. State,* 233 S.W.3d 315, 318 (Tex.Crim.App. 2007) (quoting *Rodriguez,* 203 S.W.3d at 842). The test for relevancy is much broader during the punishment phase because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range. *See Murphy v. State,* 777 S.W.2d 44, 63 (Tex.Crim.App. 1988) (op. on reh'g). However, the trial court must still restrict the admission of evidence to that which is relevant to sentencing and must operate within the bounds of Texas Rules of Evidence, including Rule 403. *Ellison v. State*, 201 S.W.3d 714, 722 (Tex.Crim.App. 2006).

Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App. 1999); *see Hammer v. State,* 296 S.W.3d 555, 568 (Tex.Crim.App. 2009). "Unfair prejudice" does not mean the evidence injures the opponent's case, because that is the central point of offering evidence. Rather it refers to "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Rogers v. State,* 991 S.W.2d 263, 266 (Tex.Crim.App. 1999) (quoting *Cohn v. State,* 849 S.W.2d 817, 820 (Tex.Crim.App. 1993)).

A Rule 403 analysis in the present case would include the following relevant factors: (1) how probative the evidence is; and (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way. *Shuffield v. State,* 189 S.W.3d 782, 787 (Tex.Crim.App. 2006); *see also Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006).

Appellant notes that he pleaded guilty to committing murder, which was substantiated by evidence that he "for no apparent reason pulled out a handgun and shot Daniel Nunez in the head, killing him." He argues that the evidence of the uncharged DWI aided the jury in deciding that he "was a person who would not learn and specifically that he did not learn anything from the events of this incident."[5] He contends that the scant evidence of intoxication and "the negative effect this incident posed to the jury," rendered the evidence more prejudicial than probative, making the trial court's admission of the evidence an abuse of its discretion. The State counters that the evidence was relevant because it demonstrated that despite being in a collision in which Appellant initially believed he had killed a family,[6] Appellant continued to abuse alcohol and illegal substances, which eventually culminated in the senseless murder of Daniel Nunez. We agree.

This evidence was relevant because it was helpful to the jury in determining an appropriate sentence for Appellant and was probative of whether Appellant would be a future danger to society. Further, the probative value of the evidence was not substantially outweighed by the danger of undue prejudice. We do not find the evidence of intoxication to be scant, but rather well

[5]Appellant also essentially argues that because the State failed to charge him with an offense even though his blood was drawn, "led him to believe he was untouchable and encouraged him to continue his course." Appellant asserts that thus the State "had some responsibility in his continued activities and not learning the dangers of his conduct and addictive personality."

[6] The truck driver's wife testified before the jury that when Appellant approached the truck immediately after the accident, he exclaimed, "F**k, I killed a family."

11

supported by the record. Further, while the evidence of the prior intoxication may have impressed the jury,[7] it did not do so in some irrational way. The evidence was rationally related to the imposition of an appropriate sentence and thus did not have an undue tendency to suggest a decision on an *improper* basis. The trial court did not abuse its discretion when it determined that the uncharged DWI evidence was probative and not substantially outweighed by any danger of unfair prejudice. Issue Two is overruled.

### Cross-Examination of Defendant

In Issue Three, Appellant contends the trial court abused its discretion in allowing the State to cross-examine him about the incident in which he rear-ended the truck. Appellant points out that in cross-examination the State got him to admit that he was intoxicated at the time, that he threw the 12-pack of beer out of his vehicle in an attempt to hide the evidence, and that he had earlier "grabbed" the 12-pack from a convenience store and left without paying. Specifically, Appellant contends his cross-examination violated Rule 608(b) of the Texas Rules of Evidence[8] which bars the use of specific instances of a witness's conduct to attack his character for truthfulness, unless the conduct is evidence of a conviction for a felony or crime of moral turpitude admissible under Rule 609.[9] The State asserts, in part, that the evidence was offered and was admissible as substantive evidence relevant to sentencing under Article 37.07. We agree with the State.

---

[7] We note that the State did not mention the uncharged DWI in its closing arguments to the jury.

[8] Appellant also mentions Rule 606. That Rule, however, deals only with a juror's competency as a witness. TEX. R. EVID. 606.

[9] Rule 608(b) states: "Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b). Rule 609 allows evidence of a criminal conviction to attack a witness's character for truthfulness if, among other things, the crime was a felony or involved moral turpitude. TEX. R. EVID. 609(a)(1).

As discussed above, Article 37.07 allows the State to present evidence at punishment "as to any matter the court deems relevant to sentencing" including evidence of an extraneous crime or bad act committed by the defendant "regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *McGee,* 233 S.W.3d at 318 (evidence is relevant under Article 37.07 if it is "helpful to the jury in determining the appropriate sentence"). The complained-of evidence elicited by the State on cross-examination was substantive evidence of prior bad acts, which was admissible as relevant to sentencing under Article 37.07, regardless of whether Appellant had been charged or convicted of those acts. While Rule 608(b) would bar cross-examination regarding a specific instance of a witness's conduct for the purpose of attacking the witness's credibility, Rule 608(b) does not apply to extraneous offenses offered during punishment for purposes other than impeachment. Because the evidence elicited on cross-examination by the State was offered for permitted substantive purposes, rather than impermissible impeachment purposes, Rule 608(b) was inapplicable to bar or limit the State's cross-examination of Appellant.

Further, a party may claim error from a ruling to admit evidence that is admissible for one purpose but not for another purpose, "only if the party requests the court to restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(b)(1); *see Turro v. State,* 950 S.W.2d 390, 400 (Tex.App. – Fort Worth 1997, pet. ref'd) (the party opposing evidence has the burden of objecting and requesting a limiting instruction when the other party introduces the evidence); *see also Hammock v. State*, 46 S.W.3d 889, 895 (Tex.Crim.App. 2001) (testimony was admitted for all purposes because appellant failed to request a limiting instruction when the evidence was admitted). Because the elicited evidence was admissible for one purpose as

13

evidence of bad acts relevant to punishment under Article 37.07, to preserve error, Appellant was required to request a jury instruction that the evidence not be considered as evidence of his character for truthfulness under Rule 608(b). Appellant failed to request a limiting instruction and thus has waived any error from admission of the evidence.

Accordingly, we conclude the trial court's ruling was within the zone of reasonable disagreement, and the trial court did not abuse its discretion in permitting the State to cross-examine Appellant concerning his intoxication, his attempt to hide evidence, or his beer run. *See Cooks,* 844 S.W.2d at 735; *Mitchell,* 931 S.W.2d at 953. Issue Three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

September 9, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

14